## THE ILLINOIS LAND AND LOAN COMPANY ·

*v.*

## WILLIAM R. BONNER.

## WILLIAM R. BONNER

*v.*

## THE ILLINOIS LAND AND LOAN COMPANY.

1. HEIRSHIP AND LEGITIMACY — *sufficiency of proof of.* Where the proof showed that a party's parents lived together as husband and wife for a long time, and until the death of the father; that they reared a family of several children, among whom were the father of the party claiming as heir of the nephew, and the nephew's father; and that among the members of the family, the relatives, and intimate family acquaintances, such party was always recognized and treated as a child of his parents and a brother of the nephew's father : *Held,* that this was sufficient *prima facie* evidence of the marriage of the parents and of the legitimacy of the party claiming as heir of his nephew, and cast upon the other side the burden of their disproof.

2. MARRIAGE — *statute prohibiting marriage with an Indian does not affect prior marriages.* A statute prohibiting the intermarriage of a white person with an Indian, enacted after such a marriage, will have no bearing upon the validity of the marriage.

3. LEGITIMACY — *sufficiency of evidence to overcome presumption of.* Every child born in wedlock is presumed to be legitimate. And when a person's mother was an Indian, proof he was a colored man will not be sufficient to overcome such presumption, as the color will be referred to that derived from his mother.

4. INFANCY — *right to disaffirm deed not personal to the infant.* All gifts, grants or deeds made by infants by matter in deed, or a writing, which takes effect by delivery of his hand, are voidable by himself, his heirs, or those who have his estate. The heirs of an infant may disaffirm his deed within the same time that the infant might himself, if living.

5. SAME — *whether act is an affirmance.* Where an heir of an infant who had conveyed lands during infancy filed a statement in the county court where administration of the infant's estate was had, that he had no other claim against the estate, except the amount due on guardian's account, it

being referable to the personal estate, was held to have no bearing upon the party's claim as heir, or next of kin, and therefore no affirmance of the infant's conveyance.

6. EVIDENCE — *secondary.* Where a will and the record thereof were burned, and the proof showed that a copy of the will before its destruction had been sent by mail to the party desiring to use it in evidence, it was *held*, that parol proof as to the contents of the will was not admissible in behalf of such party, in the absence of any evidence accounting for the non–production of the copy, or showing its non-receipt.

7. SAME — *recitals in deed to prove contents of destroyed will.* In a contest respecting the title to real estate by one claiming as heir of one of the devisees in a will, if the defendant offers in evidence a deed for the land from the executor of the will, the recitals in the deed as to the terms of the will may be taken as evidence of the contents of the will as against such defendant.

8. DEVISE — *when the interest vests.* Where lands are devised to a trustee to be held by him in trust until A shall attain his majority, when the same shall be conveyed to him in fee, this will confer on A a vested estate in fee simple, subject to the prior chattel interest given to the trustee, and consequently, on the death of A under age, the property will descend to his heir at law. But a devise to A when he shall attain the age of twenty-one years, standing isolated and detached from the context, will confer a contingent interest only.

9. Where a devise over is made dependent upon the first devisee dying before he becomes of age, or without issue, or any similar event, the devise is equivalent to a provision that the first donee shall take an immediate vested interest liable to be defeated by the happening of the contingency named ; and if it does not happen, the estate then becomes absolute and indefeasible.

10. Where a testator devised his land to a trustee to hold in equal moieties for A and his sister, B, to be conveyed to them upon their attaining the ages of 21 and 18 years respectively, and in case the sister should die without issue before the full execution of the trusts of the will, leaving the brother surviving, then the whole should be conveyed to him upon arriving at the age of 21, and the sister died after the age of 18, without issue : *Held*, that her interest did not pass and vest in the brother under the will, although the trusts were not fully executed, but descended to her heirs at law.

11. SAME — *contingent interest.* Where land is devised to a trustee to be held by him in equal moieties for a brother and sister, to be conveyed to them as they shall respectively attain their majority, with a provision that in case *both* sister and brother should die without issue prior to attaining the

ages of 18 and 21, respectively, then the trustee shall convey the estate to A and B, and the brother and sister both die without issue, one before coming of age, and the other after coming of age, A and B will take nothing, as *both* the brother and sister did not die before their majority.

12. SAME — *courts cannot provide for unforeseen contingencies.* When the testator in the disposition of his property overlooks a particular event, which, had it occurred to him, he would in all probability have provided against, the court will not rectify the omission by implying or inserting the necessary clause.

13. SAME — *contingency to divest an estate must happen literally.* When a prior estate is vested by a devise, but subject to be divested upon the happening of a contingency, the contingency must take place literally, or the prior estate will not be divested.

14. PARTITION — *where the land is divided between two adverse claimants, the share of complainant must be taken out of each tract.* When the complainant is entitled to partition of a tract of land which has been amicably divided between two persons claiming adversely to him, it is error to decree that the complainant's interest as found shall be assigned to him exclusively out of the portion held by one of the adverse claimants.

15. SAME — *decree that complainant's interest be set off to him free from all liens and incumbrances is too broad.* When, in a proceeding for the partition of land, it appeared that the defendants had paid a considerable sum of money for taxes, and to redeem the land from tax sales, it was *held* error to decree that the complainant's interest as a tenant in common be set off to him, free from all liens and incumbrances. The decree in such a case is too broad.

16. TENANTS IN COMMON — *must share equally in burdens.* In the partition of land, if one of the tenants in common has rightfully paid money for taxes, or to relieve the premises of a legal incumbrance resting on the entire interest of all, the others should be required to contribute their just proportion of the same.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

Messrs. SCOVILLE & BAYLEY, for The Illinois Land and Loan Company.

Messrs. PAGE & PLUM, for W. R. BONNER.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in chancery, filed June 23d, 1873, in the Cook Circuit Court, by William R. Bonner, against The Illinois Land and Loan Company, The Cook County Land Company, and L. B. Otis and others, for partition of part of lot 4, in block 96, in school section addition to Chicago, fronting 16 feet on Monroe street, and 198 feet on La Salle street. Complainant alleges that he is entitled to two undivided ninth parts of the premises, or to some other portion thereof, as one of the heirs at law of his late nephew, Percy W. Bonner, whose father, James D. Bonner, died in 1855, seized of the premises intestate, and left, surviving him, three children, Galila, Rosalia, and Percy. It appears that Galila died in 1856, and left a will, which was duly probated, devising her estate to John Jones, to hold in trust for certain specified purposes; that Rosalia died in 1860, and her interest in the lot was sold, by order of court, to pay her debts, and is now owned by The Cook County Land Company, one of the defendants. On January 20th, 1870, Percy, being then a minor, executed a deed of his interest in the lot to The Illinois Land and Loan Company, one of the defendants, for the expressed consideration of $10,000. Percy died July 26th, 1870, before arriving of full age, intestate as to real estate. Among the heirs he left, complainant claims to be one. The interests of the others have all been conveyed to the above named Illinois Land and Loan Company, and Cook County Land Company.

The cause was heard by the court below, upon proofs taken, and a decree rendered, finding for complainant, setting aside the deed from Percy to The Illinois Land and Loan Company, as having been obtained for an inadequate consideration, through imposition, undue influence and fraud on the part of the company, directing partition to be made, and one-ninth of the property to be set off to complainant, free from all liens and incumbrances, out of the portion of the lot claimed by

The Illinois Land and Loan Company, under a prior parti-
tion which it had made with the other defendants. Twenty-
two and a half feet were accordingly set off to complainant
out of such portion of the lot belonging to the Illinois Land
and Loan Company. The complainant, and The Illinois Land
and Loan Company, both appealed from the decree to this
court.

It is first objected that the allegation of heirship on the part
of the complainant has not been proven.

It is said that, to sustain the claim of heirship, it was incum-
bent upon complainant to prove the marriage of Percy's grand-
parents, and that complainant was their lawful offspring. There
was an abundance of proof, by competent testimony, that the
grandparents lived together as husband and wife for a long
time, until the death of the grandfather; that they reared a
family of several children, among whom were James D.
Bonner, the father of Percy, and the complainant; that among
the members of the family, the relatives, and intimate family
acquaintances, the complainant was always recognized and
treated as a child of such grandparents, and a brother of James
D. Bonner. This was sufficient *prima facie* evidence of the
marriage, and of the legitimacy of complainant, and cast upon
the defendants the burden of their disproof.

There was evidence that the grandparents resided in North
Carolina; that the complainant and James D. Bonner were
born there; that their mother, the grandmother of Percy, was
an Indian woman; and it is claimed that such marriage is thus
shown to be an unauthorized one, under a statute of North
Carolina, of 1819, which forbids the intermarriage of a white
person and an Indian. Mrs. Anderson, a witness, testified that
she was a sister of complainant and James D. Bonner, Percy's
father; and that at the time of giving her testimony, in 1874,
she was 57 years of age; and that she was not the eldest child;
consequently, her parents, the grandparents of Percy, must
have been married prior to 1817, two years before the law was

enacted.    We cannot see that the statute has any bearing upon the validity of the marriage.

It is claimed that complainant has African blood in his veins, and that, as James D. Bonner, Percy's father, was the offspring of a white man and an Indian woman, and complainant was born of the same mother, he, consequently, cannot be the son of the father of James D. Bonner.    All the testimony upon this point is that of the witnesses King and Jones, and is as follows : King having been asked whether complainant was a colored or a white man, answered he was a colored man.

Jones stated he thought complainant had African blood in his veins.    On cross-examination, he said he did not claim to know that there was African blood in the complainant.    As there was the presence of Indian blood, we are not satisfied, from such evidence, that the color spoken of by the witnesses meant any thing more than the tinct which had been derived from the red man.

The testimony of two witnesses connected with the Illinois Land and Loan Company — one as attorney, the other as an agent and officer — through whose instrumentality the deed from Percy to the company was procured, was introduced to prove statements made by Percy in conversations had with them after the deed had been obtained.    They testify that in such conversations, Percy repeatedly stated that he did not regard complainant as his uncle, though he had been called such ; that it was well understood in the family that complainant was an illegitimate child.    They testified further, that Percy brought to the office of the attorney two bibles, one of which he said was his father's, and the other that of his grandparents; that they contained their respective family records ; that the name of the complainant did not appear in either of the records, and that Percy wished the attorney to keep the books, so as to show, in case of his death, who were his heirs; that the bibles were burned in the October (1871) fire of Chicago. This is the sole evidence of this character which the record con

tains; not a syllable against the legitimacy of the complainant falls from the lips of any other witness.

Uniformly, at all other times, as testified to by a large number of witnesses, Percy had recognized and called complainant his uncle, and so addressed him in correspondence with him. Although the declaration of Percy, testified to, was that the thing was well understood in the family, not a word of it comes out in any other testimony, although a member of the family — a sister — was examined as a witness, and other relatives and intimate acquaintances of the family. Mrs. Anderson, the sister of complainant, testifies to her knowing of her father's family having a family bible; that her mother's bible was destroyed, stating the circumstances of its destruction; that she does not know what became of her father's bible, if he had one.

Notwithstanding, according to this testimony, the extreme care which had been taken to preserve the evidence of who were the heirs of Percy, and that complainant was not one, by depositing the two bibles with the attorney for safe keeping, yet, after the death of Percy, this same attorney, in a letter to Mrs. Peterson, of October 20, 1870, recognizes complainant as an heir of Percy; and in a letter to complainant, of August 19, 1870, he says:. "Your interest, as his (Percy's) heir, is one-fourth of his real estate." It would seem that he could not rely upon these communications from Percy, as disproof of complainant's heirship, and neither can we repose upon the evidence, as establishing the illegitimacy of complainant. Every child born in wedlock is presumed to be legitimate. *Morris* v. *Davies*, 3 Carr. & Payne, 215. We do not consider the presumption to be repelled by any facts in evidence.

We shall not enter upon the question of whether the deed from Percy to the Illinois Land and Loan Company was fraudulently obtained, as Percy was a minor at the time he executed the deed, died before coming of age, and, within three years after his death, the complainant filed this bill, wherein he ex-

41—75TH ILL.

pressly disaffirms the deed.    We have no question of his right of disaffirmance.

The general rule is, that a minor may disaffirm his deed, made during minority, within a reasonable time after attaining full age.    This court, in *Blankenship* v. *Stout*, 25 Ill. 132, established three years after majority to be such reasonable time, and the rule has since been followed.

Such right of avoidance is not one personal to the minor himself.    All gifts, grants, or deeds, made by infants, by matter in deed, or a writing, as do take effect by delivery of his hand, are voidable by himself, his heirs, or those who have his estate. 3 Bac. Abr., title Infancy and Age, 138 ; Tyler on Infancy, 69.

It is urged that the three years to disaffirm, allowed to one after attaining his majority, are given because of his presumed inexperience and ignorance of business affairs, and for the purpose of giving him ample time for gaining information, but that no reason exists for giving an adult heir three years.    As we regard it, the time is given absolutely, in all cases, without regard to any special facts and circumstances which may exist, so that they do not amount to a ratification ; and that the heir succeeds to all the rights, in this respect, of the ancestor.    Although complainant, soon after the death of Percy, had notice of the deed from Percy to The Illinois Land and Loan Company, and kept silence for almost the full term of three years after Percy's death, suffering others to pay the taxes, we do not conceive that affects the right of avoidance.    We are of opinion he had, notwithstanding, the full term of three years to elect whether to disaffirm the deed or not.    We see no acts and circumstances from which ratification may be inferred. The statement filed by complainant in the county court, that he had no other claim against Percy, or his estate, except the amount due on guardian's account, which has been dwelt upon, manifestly had sole reference to personal estate, and could have no bearing on his claim as heir or next of kin.

It is contended, on the part of the complainant, that his in-

terest was incorrectly declared by the decree; that it was one-third, instead of one-ninth, as declared.   James D. Bonner, Percy's father, died seized of the premises, leaving three heirs, his children, Galila, Rosalia and Percy, each taking one-third. There is no question as to the interest Percy took by descent from his father; but there is a question as to the extent of Percy's interest at the time of his death, which arises out of the will of Galila, as to what extent, if any, he took under that.

The will was burned in the Chicago fire of October, 1871. There is an exhibit A attached to the bill, which the witness Jones, the executor, states he thinks is a substantially correct abstract of the will.

This exhibit was objected to as evidence, and it was insisted that a copy of the will should be produced.

There was proof that, soon after the death of Percy, a copy of the will was sent by mail to complainant, at New Orleans, the place of his residence, and of circumstances connected therewith, which rendered it so probable the copy was received, that we think this exhibit should not have been received in evidence in the absence, as there was, of any evidence accounting for the non-production of the copy, or showing its non-receipt.

But, in a deed which The Illinois Land and Loan Company introduced in evidence, from John Jones, executor and trustee of the will, to such company, dated August 28, 1872, to show title in them to Galila's share, there was a recital of the will, which, we are of opinion, may be properly received as evidence against the company, and is as follows: "That Galila Bonner, deceased, appointed said grantor her executor, and constituted him a trustee in her will; that it was provided in said will that said grantor should hold, as trustee, in equal moieties for Percy William Bonner, and his sister, Rosalia A. Bonner; that, upon Rosalia's arriving at eighteen years of age, he should convey one moiety thereof to her; and, upon said

brother's arriving at the age of twenty-one, convey the other moiety thereof to him. That in case said sister should die without issue, before the full execution of the trusts of said will, leaving said brother surviving, then the whole of the estate should be conveyed and delivered over by said executor to said brother upon his arriving at twenty-one years of age; that in case both said sister and brother should die without issue, prior to attaining the ages of eighteen and twenty-one respectively, then said executor should convey said estate to Amelia M. Bogle and Robert Bogle Trulear;" the deed conveying all interest held by the grantor as such executor and trustee in the premises in question. The only substantial difference between the recital and the "exhibit A," is in the clause conveying to Rosalia and her brother, it reading in the "exhibit:" "And when said brother and sister shall attain the ages above stated (21 and 18), to convey, etc., in equal moiety to said brother and sister."

Complainant's counsel assert the following legal propositions as deducible under the proper construction of this will, viz. :

1st. That, on the death of the testatrix, the beneficial interest vested at once in the brother and sister, subject to their support and education in the hands of the trustee, till Percy should arrive at the age of twenty-one.

2d. That on the death of Rosalia, her share was divested, and went over, by the terms of the will, and became vested in her surviving brother.

3d. That the interests of both, though vested, were liable to be divested by the limitation over to Bogle and Trulear in the event of *both* dying, without issue, under the respective ages of eighteen and twenty-one.

4th. But, that contingency never occurring, the testatrix's entire interest, on the death of Percy, and which, with his interest, makes two-thirds of the entire property, went to his *next of kin*, that is, to the complainant and Mrs. Anderson, Percy's uncle and aunt.

We assent to the correctness of these propositions, regarding them as sustained by the authorities, except as relates to the interest of Rosalia, in which respect they are to be qualified in accordance with the view hereafter taken of that interest. We cannot doubt that the interest devised to Percy and Rosalia vested upon the decease of the testatrix, and was not contingent. It appears to be the recognized construction that, where the word " when," and its equivalents, as in this case, " upon arriving at eighteen years of age," are used in such connection as here, in regard to realty, they relate to the time of enjoyment, and not to the time of vesting of the estate.

In 1 Jarman on Wills, 734, marginal paging, the doctrine is thus stated : " Where a testator devises lands to trustees until A shall attain the age of twenty-one years, and if, or when, he shall attain that age, then to him in fee, this is construed as conferring on A a vested estate in fee simple, subject to the prior chattel interest given to the trustees, and, consequently, on A's death under the prescribed age, the property descends to his heir at law, though it is quite clear that a devise to A, if or when he shall attain the age of twenty-one years, standing isolated and detached from the context, would confer a contingent interest only."

And in 2 Redfield on Wills, 224, it is said : " And a devise over always supplies an argument in favor of the prior devisee or devisees taking a vested interest.   Where the devise over is made dependent upon the first devisee dying before he become of age, or without issue, or any similar event, it is considered that the devise is equivalent to a provision that the first donee shall take an immediate vested interest, liable to be defeated by the happening of the contingency named ; or, if it do not happen, the estate then to become absolute and indefeasible ; " and see cases cited in the authorities quoted.

We cannot think that the interest of Rosalia, under the will, became divested, and passed to her brother, although she did die without issue before the full execution of the trusts of

the will, in which event, by the literal terms of the will, her interest was to be conveyed to him by the trustee. Such divesting and passing of her interest would be inconsistent with the previous provision of the will, that the trustee should convey Rosalia's interest to her on her arriving at eighteen years of age. She had, for some considerable time before her death, arrived at that age, and was entitled to a conveyance, from the trustee, of her moiety. Although there had not been a full execution of the trusts of the will, as respected her brother, he not having arrived at twenty-one, there had been, or should have been, so far as related to herself, as she had arrived at eighteen; and we regard it as the true construction of the provision in question, that her interest was to be conveyed by the trustee to her brother, only in case there had not been a full execution of the trusts of the will as to herself, and that she had not become entitled to a conveyance from the trustee. We think nothing of the interest of Rosalia passed to Percy under the will of Galila, and it is not claimed to have done so in any other manner.

Did Bogle and Trulear take any thing under the will? We are of opinion they did not, for the reason that the contingency upon which they were to take never happened. They were to take only "in case *both* said sister and brother should die without issue prior to attaining the ages of eighteen and twenty-one respectively." The sister and brother did both die without issue, but they did not both die prior to their attaining those ages respectively. One did, and the other did not, the brother dying before reaching the age of twenty-one, but the sister, not until after having reached the age of eighteen.

The terms of this devise over are clear, and free from the least ambiguity. It seems plain that the devise is contingent upon the fact of *both* Rosalia and Percy dying before reaching the ages of eighteen and twenty-one respectively. Judge Redfield, speaking of rules of construction, says: "There is none of

more universal application, both here and in England, than that the plain and unambiguous words of the will must prevail, and are not to be controlled or qualified by any conjectural or doubtful constructions, growing out of the situation, circumstances, or condition, either of the testator, his property or family." 1 Redf. on Wills, 429, 430. The testatrix did not in her will provide for the events that have happened, that is, of her sister dying over eighteen and the brother under twenty-one. In such case, the court will not provide for the unforeseen events. "Where the testator, in the disposition of his property, overlooks a particular event, which, had it occurred to him, he would in all probability have provided against, the court will not rectify the omission by implying or inserting the necessary clause; conceiving it would be too much like making a will for the testator, rather than construing that already made." 2 Roper on Legacies, 1464.

*Madison* v. *Chapman,* 5 Jur. (N. S.) 277, cited in 1 Redf. on Wills, 440, 441, is a case in its features much like the present, being one of a devise over on a similar contingency, where it was held that the gift over had failed, the precise state of the facts contemplated in the will, upon which it was to take effect, not having occurred; that the words that the testator had used must be adhered to.

A contingency divesting a prior vested interest must happen literally. 1 Roper on Legacies, 619, marg. page.

The conclusion is, that Percy never became divested of, and Bogle and Trulear vested with, the interest in the premises under the will of Galila Bonner, which vested in Percy; that the same passed to his heirs; that interest we find to be one-half of Galila's share of one-third, making one-sixth, which, with Percy's share inherited from his father, one-third, composed one-half, which descended to Percy's heirs, and they being two, his uncle and aunt, the complainant and Mrs. Anderson, makes the complainant's interest in the premises one-fourth.

Our statute provides that if the intestate leave no children or

descendants of children, and no parents, brothers or sisters, or descendants of such, and no widow (in which category was Percy Bonner at his decease), then his estate shall descend in equal parts to the next of kin to the intestate, in equal degree, computing by the civil law; and there shall be no representation among collaterals, except with descendants of the brothers and sisters of the intestate. It is objected, that it was incumbent upon the complainant to prove that the persons named in his bill were the only heirs of Percy Bonner, and that he has not done so; that the evidence shows that Percy's mother had several sisters who stand related to Percy in the same degree with complainant. We do not find, from the evidence, that there were any surviving sisters of Percy's mother. True, the witness Reed states there were several such sisters; but when asked how he so knew, he says, by the bible which he saw; manifestly incompetent evidence to prove such fact, and especially that there were any such sisters then living.

It is unnecessary to consider whether, by the allegations of the bill, it does not stand admitted, that complainant inherits only a third share, as one of three heirs, so as to preclude him from claiming any more, as is urged, because, upon another hearing in the court below, there will be afforded an opportunity to amend the bill in this respect.

It is assigned for error by the Illinois Land and Loan Company, that the court below ordered that the complainant's interest should be assigned to him exclusively out of the separate portion of the premises claimed by said company, instead of equally out of such portion and the portion claimed by the Cook County Land Company under the amicable division which had been made between them. We see no reason why the assignment should have been ordered to be made exclusively out of the Illinois Land and Loan Company's portion. We find there was error in this.

It is also assigned for error that complainant's share was decreed to be set off to him free from all liens and incumbrances.

There were two mortgages introduced in evidence, one for $3,000, and the other for $8,000, which had been given upon the premises by guardians of Percy, and there was also evidence of some considerable amounts of money which had been paid for taxes, and redeeming from tax sales. So far as respects the mortgages, there does not seem to have been any sufficient competent evidence that they were valid liens upon the premises, as having been executed in pursuance of the provisions of the statute, as, on petition to the county court, an order made by such court, and security given by the guardian, as required by the statute. But so far as there were payments of taxes, etc., rightly made by any of the co-tenants, they should have been shared ratably by all the co-tenants, unless some reason to the contrary is shown.

Where one co-tenant removes a common burden upon the land, all should contribute proportionately to the expense.

So far as appears, we regard the decree as too broad, in directing complainant's portion to be set off free from all liens and incumbrances, and that there was error in this respect.

The decree must be reversed, and the cause remanded for further proceedings in conformity with this opinion, with leave to amend the bill, the costs of the appeals to be equally divided between the parties.

*Decree reversed.*