## THE ILLINOIS LAND AND LOAN COMPANY
### v.
### MARTIN BEEM ET AL.

1. PREMATURE ACTION—PRECEDENT DEMAND.—The contract sued upon provided, among other things, that certain specified payments should be made by the company "on reasonable request." The legal effect of this language is equivalent to an agreement to pay within a reasonable time after request. This being the case, the debt could not mature until demand or request made, and a reasonable time for compliance had elapsed.

2. PROOF OF REQUEST—DEMAND UPON AN ATTORNEY.—The only evidence tending to show a demand, was that appellee's intestate called upon the attorney of appellant and requested payment by appellant. It does not appear that the person upon whom demand was made was the general attorney for appellant in all its law business; and even had such been the fact, a demand upon him as the general attorney of the company would not have been sufficient. A demand for the money, in order to avail appellee, should have been made upon some officer or agent of the company having authority to act for it, by paying over the money or refusing to make such payment. The attorney of the company, in virtue of his employment as

Illinois Land and Loan Co. v. Beem et al.

such, would have no control over the funds of the company, and hence no authority to make payment or refuse the demand.

3. WAIVER OF DEMAND—REFUSAL BASED ON OTHER GROUNDS.—The attorney upon whom demand was made, replied that payment could not be made until the legal heirs of the deceased had been ascertained, and afterwards testifying on the trial stated as a reason why payment had not been made, that the heirs had repudiated the contract of the deceased and the consideration for the payment had failed. Although in some cases where the refusal of a party to perform has been based upon other grounds than the want of demand, such refusal has been deemed a waiver of the demand, the evidence in this case will not warrant such a conclusion. It does not appear that there was any formal refusal, or that the company assigned the disaffirmance by the heirs as a reason for non-payment.

4. FAILURE OF CONSIDERATION.—A total failure of the consideration was pleaded by the appellant as a defense to this action, and to support such plea the disaffirmance by the heirs of the contract of the deceased, who was a minor, was given in evidence. The legal right to make such disaffirmance is conceded. The consideration recited in the contract, was the conveyance of certain land, and it also authorized and empowered appellant "to secure, collect, take possession of, have and retain for its own use, all such rights, interests and proceeds of sales growing out of * * * * said property," etc. These rights and interests, whatever they may be, appear to be additional to those granted by the deed conveying the land, and as there does not appear to be any disaffirmance of these by the heirs, there cannot be said to be a total failure of consideration.

5. DISAFFIRMANCE—HOW MANIFESTED.—Disaffirmance is a matter both of act and intention. In order to a disaffirmance of a deed executed during infancy, either by the infant himself after attaining his majority, or by his legal representatives in case of his death, there must be some act performed indicating an intention to disaffirm, and such act must be inconsistent with the continued validity of the deed executed during infancy, so that the two cannot properly stand together.

ERROR to the Circuit Court of Cook county; the Hon. W. K. McAllister, Judge, presiding.

Messrs. RICABY & LANDIS, for plaintiff in error; that there was a total failure of consideration, and upon the question of disaffirmance, cited Illinois Land & Loan Co. v. Bonner, 75 Ill. 315; Hughes v. Watson, 10 Ohio, 127; 3 Bac. Abr. 138; Tyler on Infancy, 69; 1 Parsons on Contracts, 328; Prout v. Wiley, 28 Mich. 164; Dixon v. Merritt, 21 Minn. 196; Young v. McKee, 13 Mich. 555.

As to the person upon whom demand should be made: 1 Parsons on Contracts, 77; Story on Agency, § 140.

Messrs. PAGE, PLUM & KELSEY, for defendants in error; that there was not a total failure of consideration, cited Bowman v. Long, 11 Chicago Legal News,. 42; 1 Parsons on Contracts, 505.

That there was a waiver of the demand: Norwich v. Western Ins. Co. 34 Conn. 561; Wolf v. Willitts, 35 Ill. 88; Batchelor v. People's Ins. Co. 3 Ins. Law Jour. 122; McBride v. Republic Ins. Co. 30 Wis. 562; The People v. Adamire, 39 Ill. 252.

BAILEY, J.  On the twentieth day of January, 1870, Percy W. Bonner, who was then a minor between nineteen and twenty years of age, conveyed to the Illinois Land and Loan Company all his right, title and interest in and to a certain lot of land in the city of Chicago; and at the time of making such conveyance, and as the real consideration therefor, received back from said company a contract by which said company, among other things, agreed to pay him twenty-five dollars per month up to May 1st, 1871, the date when he ' should attain his majority, and the sum of $83.33 per month during the remainder of his life.  Said contract further provided that in case of the decease of said Bonner before the first day of June, 1871, said company should pay " *on reasonable request* " certain specified sums of money, amounting in all to $5,000, as donations or bequests from said Bonner to certain persons therein named.  Among the persons thus named was Mrs. D. King, wife of Harrison D. King, of Chicago, to whom it was provided that $500 of said money should be paid.  In the latter part of July, 1870, Bonner died.  This suit was afterwards brought by Mrs. King to recover of the Illinois Land and Loan Company said sum of $500, appointed by said contract to be paid as a donation or ·bequest to her.  During the pendency of the suit, Mrs. King died, and the appellees, her administrators, were substituted as plaintiffs.  A trial was thereupon had in the court below, resulting in a judgment in favor of appellees against appellant for $740 and costs.

It is insisted by appellant that the evidence fails to show any sufficient demand or request for the payment of the money in question prior to the commencement of the suit.

It seems to have been conceded in the court below, and it is not questioned here, that under the provisions of this contract, before appellant was liable to suit, payment of the money must have been requested, and a reasonable time given for compliance with the request. Such undoubtedly is the legal effect of the language of the contract. The agreement was to pay on reasonable request, which was equivalent to an agreement to pay within a reasonable time after request. The debt, then, could not mature until demand or request was made, and a reasonble time for compliance had elapsed.

We think the evidence wholly fails to establish such demand or request as was contemplated by the agreement. The only evidence tending to show a request, was that of Harrison D. King, the husband of the original plaintiff, who testifies that five or six days after the death of Bonner, his wife and he went to the office of Mr. Scoville, who at the time was an attorney for appellant, and that Mrs. King told Mr. Scoville that she came to see about getting the $500 mentioned in the agreement; that Mr. Scoville told her they could not do anything about it until they had found out who the heirs were, and settled with them first; that he wanted her to help him find out who they were, and that she gave him the names of some of them. Mr. Scoville testifies that he does not remember the interview distinctly, but presumes it was substantially as stated by Mr. King. He further testifies that in 1870, he was the attorney for appellant in some matters but not in all; that the contract in question was in the handwriting of W. K. Reed, who, as it appears, was appellant's cashier and general manager, except the last clause, which was in the handwriting of the witness; that witness made out the original draft of the contract and was attorney for the company in that connection. He was then asked whether he remembered Mr. and Mrs. King's coming to him as Mr. King testified, and if so, what he, the witness, claims was the reason the company did not pay her the $500. In answer, after stating that he did not remember distinctly about the interview, etc., as already mentioned, he says: "The reason the company did not pay her was, it claimed that the only heirs at law of Percy W. Bonner repudiated or disaffirmed said contract within three

years after his death, and that the company consequently got no benefit of the contract, or of the deed of conveyance mentioned therein."

It is manifest that a demand for the money, in order to avail appellees, should have been made upon some officer or agent of appellant having authority to act for it in relation to the subject matter of the demand, by paying over the money or refusing to make such payment. Mr. Scoville, the only person of whom a request for the money was made, was merely an attorney for appellant in some of its matters. Had he been the general attorney of the company, authorized to represent it in all its law business, we do not think the payment of this money to Mrs. King, or a refusal to pay it would have been within the purview of his authority. He could not, as the attorney of the company, have control of its funds, and so would neither have the means of making payment, nor the power of determining on behalf of his client, whether payment should be made or not. It should be observed that at the time of his interview with Mrs. King, no suit was pending involving her right to this money, nor does it appear that the matter had in any other way been placed in his hands for adjustment.

But the evidence leaves it entirely uncertain as to how far even the relation of attorney and client existed between Mr. Scoville and the company. He was its attorney in some matters, but not in all. Precisely what matters were within the purview of his employment, does not appear. He made, it is true, the original draft of the contract, "and was attorney for the company in that connection." This, however, seems only to imply that he was employed by the company in matters connected with the drafting of the contract, which would by no means necessarily include the adjusting of rights or conducting litigations subsequently growing out of it.

Nor does it appear from the evidence, that Mr. Scoville assumed to determine for his client whether this money should be paid over to Mrs. King or not. He merely told her that they could do nothing about it until they had ascertained who the heirs of the decedent were, and had settled with them, and desired Mrs. King to assist him in the inquiry, which she

accordingly did. All this was quite as consistent with an ultimate intention on the part of the company to pay her the money as the reverse.

It is, however, insisted by appellees that the evidence tends to show a waiver on the part of appellant of the demand or request provided for in the contract. Such waiver is sought to be inferred from the testimony given by Mr. Scoville in relation to the reason why the company did not pay Mrs. King the $500 in question. We are unable to give to this testimony the effect here claimed for it. It is not pretended that such reason was stated or disclosed to Mrs. King at the time she called on the witness to see about getting her money. In point of fact such disclosure could not have been then made, as the reason stated by the witness depended upon events which did not transpire until long afterwards. The interview between Mrs. King and the witness took place five or six days after Bonner's death. The repudiation or disaffirmance of the contract by the heirs of Bonner, which the witness assigns as the reason why the company did not pay the money, did not take place till many months thereafter. Nor is there any pretense that such disaffirmance, even after it took place, was assigned by the company to Mrs. King, or in any other way declared by it as its reason for non-payment. The witness merely states what, at the time of the trial, was known or supposed by him to be the real reason why the company did not pay. Cases may be found where the refusal of a party to perform a contract, such refusal being at the time placed upon other grounds than the want of demand, is held to be a waiver of such demand. Here it does not appear that there was any formal refusal at all; much less does it appear that the company assigned the disaffirmance of the contract as its reason for non-payment.

Among the defenses set up by appellant in the court below, was a total failure of consideration. In the plea presenting that defense, it is alleged that at the time of making the contract in question, Bonner was a minor, under the age of twenty one years, and that at the time of his death he had not reached his majority; that after his death his heirs-at-law revoked and disavowed the deed of said Bonner, whereby he conveyed to appellant said lot of

land; that said conveyance was the only consideration for said contract, and that upon the revocation and disaffirmance thereof, the consideration of said contract wholly failed.

The right of the heirs of Bonner to disaffirm his deed, executed during his infancy, within the same period of time within which the infant himself, if living, might have disaffirmed it, is not called in question, as it has been directly settled by the Supreme Court in a suit in relation to this particular deed. Illinois Land and Loan Co. v. Bonner, 75 Ill. 315.

It is admitted that William R. Bonner and Cassandra Anderson were the only heirs-at-law of said Percy W. Bonner, each being entitled by inheritance to one-half of his estate. On the twenty-third day of June, 1873, the same being within three years after the death of said Percy W. Bonner, said William R. Bonner filed in the Circuit Court of Cook county his bill in Chancery, expressly disaffirming the conveyance to appellant and praying for a partition of said premises. Said Cassandra Anderson, as is claimed, also disaffirmed said deed on her part by a conveyance of her interest in said premises to one Charles A. Gregory, by deed dated November 2d, 1870. It is not disputed that the filing by said William R. Bonner of said bill for a partition, was effectual as a disaffirmance on his part. It is insisted, however, that such effect cannot be given to the deed from Cassandra Anderson to Gregory.

It appears that prior to the execution of said deed, said Gregory had obtained title to an undivided half of said premises, and that on the 19th day of October, 1870, an agreement was entered into between him and appellant, under which they were to become tenants in common of said premises, and owners of the same in undivided halves. It was further agreed that both of said parties would endeavor to perfect their title to said premises, so that all conflicting claims and clouds should be removed therefrom, each to pay one-half of the expenses thereby incurred, and that any right, claim, title or interest that might be acquired by either of them until the title should be finally perfected, should enure to the mutual benefit of both.

It is claimed that the deed from Cassandra Anderson to Gregory, being executed while the foregoing contract was in

Illinois Land and Loan Co. v. Beem et al.

force, enured to the benefit of appellant, and was precisely the same in effect as though it had been executed to appellant itself, and so must be regarded as an affirmance rather than a disaffirmance by Cassandra Anderson of the Bonner deed. Doubtless, in order to a disaffirmance of a deed executed during infancy, either by the infant himself after attaining his majority, or by his legal representatives in case of his death, some act must be performed evidencing an intention to disaffirm; and such act must be inconsistent with the continued validity of the deed; and if the disaffirmance is sought to be accomplished by a conveyance, the subsequent deed must be inconsistent with the deed executed during infancy, so that the two cannot properly stand together.   It becomes then a matter both of act and intention.   Possibly had Cassandra Anderson known and understood the arrangement between Gregory and appellant, and conveyed to Gregory merely with a view to perfecting the title claimed by appellant through the Bonner deed, she would have affirmed rather than disaffirmed such deed, notwithstanding the fact that her conveyance was made to a third person.   The record, however, wholly fails to disclose any knowledge on her part of the contract between Gregory and appellant.   So far as appears, she treated with him as a person wholly disconnected with the title claimed through the Bonner deed.   For a new consideration paid to her by Gregory, viz: $1,000, she conveyed her interest in the land to him, as she might have done to any other stranger to the Bonner deed.   Her act, at least so far as she was concerned, evidenced an intention to disaffirm, and was inconsistent with the continued validity of the deed executed by the infant.   On their face, the two deeds were inconsistent with each other, so that they cannot both stand together.

We do not perceive how the effect of this conveyance as a disaffirmance, can be obviated by a secret understanding, or arrangement between Gregory and appellant.   If the title obtained by Gregory inured in whole or in part to appellant, it did so, not by force of the deed itself, but by virtue of a contract to which Cassandra Anderson was no party, of which she was ignorant, and the purposes of which she had no intention of promoting.   It might with as much propriety be held that

a subsequent conveyance from Gregory to appellant would obviate the effect of this deed as a disaffirmance, as to give such effect to this secret prior arrangement. We think, under the evidence, the deed to Gregory was clearly a disaffirmance by Cassandra Anderson of the Bonner deed.

The plea, however, under which appellant sought to take advantage of the defense growing out of the disaffirmance of the deed executed by the infant, was, as we have seen, a plea setting up a *total* failure of consideration. The plea avers that the conveyance of the land by Bonner was the sole consideration of the contract sued on. On inspection of the contract itself, however, we find what is apparently, at least, an additional element of consideration. The contract recites, as the consideration on which it is based, not only the conveyance of the right, title and interest of Bonner in said land, but it also authorizes and empowers appellant " to secure, collect, take possession of, and have and retain, for its own use and benefit, all such rights, interests and proceeds of sales growing out of or pertaining to said property, on the part or behalf of him, the said party of the first part." Precisely what the rights and interests here assigned to appellant were does not appear from the record, nor does the contract indicate their character sufficiently to enable us to ascertain their precise nature or value. Construing the contract, however, by such lights as we have, these rights and interests appear to us to be additional to the rights and interests granted by the deed, and as there does not appear to have been any disaffirmance of the assignment to appellant of this part of the consideration of the contract, it is impossible to say that the consideration has *wholly* failed. It is well settled that a defendant cannot avail himself of a partial failure of consideration under a plea of total failure, and upon this principle it necessarily follows that appellant's plea in this case is not sustained by the proof. As the case must be remanded for a new trial, further pleas may be filed, properly presenting the defense here sought to be set up. For the want of proof of a request to pay the money sued for before the commencement of the suit, the judgment must be reversed, and the cause remanded.                    Judgment reversed.