WILLIAM L. SHACKLEY ET AL., ADMINISTRATORS, APPEL-
LANTS, V. ANNIE B. HOMER ET AL., APPELLEES.

FILED JUNE 10, 1910. No. 16,012.

1. Wills: CONSTRUCTION: VESTED ESTATE IN FEE: DEFEASANCE. Where
real estate is devised to executors, to be held by them in trust
until C shall attain the age of 25 years, when the same shall be
conveyed to him in fee, with a devise over, in the event of C's
death prior to attaining such age, to C's widow and children, if
any, and, if none, then to C's mother, and brother and sister of
the full blood, this will confer on C a vested estate in fee simple,
subject to the prior chattel interest given to the executors, and
also subject to defeasance in the event of his death before attain-
ing such age.

2. Mortgages: FORECLOSURE: PARTIES: JURISDICTION. And in such a
case, in a suit brought to foreclose a mortgage upon the real
estate so devised, executed by the testator in his lifetime, where
the probate of the will is being litigated, so that the executors
named have not qualified, and no administrators c. t. a. have been
or could be appointed in their stead, the service of summons upon
C and upon all persons then living who would take the devise
over in the event of C's death prior to his attaining the age of 25
years, and upon the widow and heirs at law of the testator, and
upon the special administrator of the estate of the testator, con-
fers upon the court jurisdiction over the said real estate and
the title thereto, and of all parties in interest in said real estate
and title.

3. ———: ———: REDEMPTION. And the confirmation of a sale under
a decree in such suit, and the execution and delivery of a sheriff's
deed for the real estate involved therein, will bar all equity of
redemption of the defendants so served and will pass to the
grantee in said deed all interest and title in and to said real
estate owned by the testator at the time of his decease.

APPEAL from the district court for Douglas county:
HOWARD KENNEDY, JUDGE. *Affirmed.*

*Henry E. Maxwell,* for appellants.

*William Baird & Sons* and *E. H. Scott, contra.*

FAWCETT, J.

Harrison W. Cremer died June 3, 1896, in Douglas county, leaving a last will and testament, the parts material to this inquiry being as follows:

"Item 2. I give and bequeath to my executors, hereinafter named, and their successors, the following described real estate, situate in the county of Douglas, Nebraska, to wit: Lot seven (7) and the west twelve (12) inches in width of the south half of lot eight (8) in block one hundred and thirty-six (136), lot one (1), in block fifty-seven (57), and lot five (5) in block forty (40), all in the city of Omaha aforesaid, together with all and singular the buildings and appurtenances thereunto belonging; in trust, however, for the objects, uses and purposes following, that is to say: That until such times as they shall convey said several lots or parcels of real estate as hereinafter directed, they shall manage and control the same to the best advantage of my estate and of said realty, leasing the same to the best advantage, collect rents, pay all lawful taxes, make all necessary repairs, effect reasonable insurance on the buildings, and do all things else requisite for the due preservation and care of the property. If the buildings upon either of the three parcels of ground shall, during the time they are in charge of my executors, be destroyed, or damaged by fire, or otherwise, they must rebuild or repair the same as soon as possible, and to that end, if the funds realized from the insurance upon the destroyed or injured building, or other available means, shall be inadequate for that purpose, they may borrow such additional sum as may be required, and secure the payment thereof upon the particular property whereon it is to be expended, by a mortgage to be by them duly executed, but not for a credit extending beyond the time when it is to be finally conveyed by them in fee as hereinafter directed. Out of the income of said three parcels of real estate (which is to be considered as a joint fund), in addition to the expenditures contemplated above for its

preservation and care, I direct the payment of all interest as it shall mature, upon any mortgage incumbrance resting thereon, the several bequests herein made of money to my wife, and my sons and daughters, and the balance thereof they shall deposit in the Omaha National Bank, upon the best terms that can be made as to interest thereon, as and for a sinking fund, which, in the order, and at the several times fixed herein for the conveyance of said several parcels of real estate to certain of my heirs, and to the full extent that it has then accrued, shall be applied toward the payment of any incumbrance then resting on the particular piece of property then to be conveyed. If any mortgage indebtedness resting on either of said parcels of real estate at the time of my decease shall mature while my executors are in charge thereof, I direct them to replace or extend the same by a new loan, securing the payment by a mortgage upon that particular piece of property, but such extension or new loan must not reach beyond the time fixed herein for their final conveyance of the premises by which it is secured."

"Item 4. Subject to the foregoing provisions respecting the same, I give and bequeath to my beloved son, Leonidas R. Cremer, the above mentioned lot five (5) in block forty (40) and to my beloved son, Cedric E. Cremer, said lot seven (7) and the west twelve (12) inches in width of the south ½ of lot eight (8) in block one hundred and thirty-six (136) in the city of Omaha, Nebraska, the same to be conveyed to them, respectively, on reaching the age of twenty-five years, by my executors, by deeds duly executed and delivered, so as to convey to each of them a good title in fee simple, but subject to whatever incumbrance may be then resting thereon after the preceding provisions respecting the same have been complied with. But, in the event of the death of either of my said sons, Leonidas or Cedric, before reaching the age of twenty-five years, leaving surviving him a widow, or child or children, then in like manner my executors shall convey a one-third part of the premises hereby devised to such

son to his widow and the remaining two-thirds thereof to such child or children, share and share alike. If he leave no widow, but leaves a child or children the premises shall be conveyed to them. If he leave a widow, but no children, they shall convey to the widow an undivided one-third of the premises, and the residue to his mother, brother and sister, of the full blood, or such of them as shall then be living, share and share alike. Provided, however, that if such brother or sister shall have died leaving children, they shall receive the share that their parent, if living, would have been entitled to under this will. If either of my said sons, Leonidas or Cedric, shall so die, leaving no widow or children, then the whole of the estate herein devised to him shall be conveyed to his mother, and his brother and sister of the full blood, or such of them as shall then be living, share and share alike. Provided, further, that if such brother or sister shall have died, leaving issue, such issue shall have and take the portion that such brother or sister, if living, would have been entitled to hereunder."

Similar provisions are made by the fifth item of the will for the daughter Mina, with respect to the other lot.

"Item 7. I do hereby nominate my friends Charles C. Housel, formely of said city of Omaha, but now of Chicago, Illinois, and W. B. Millard of said city of Omaha, to be the executors of this my last will and testament, having full confidence that they will faithfully carry out its provisions."

A number of questions are presented in the pleadings and have been ably argued by counsel, both in their briefs and at the bar; but the conclusion we have reached renders it unnecessary to consider any but the one question: What interest, if any, did Cedric E. Cremer take under the will of Harrison W. Cremer, deceased? Did he take a present vested interest in and title to the property devised, on the death of his father, or was such devise contingent merely, so that no interest or title would ever vest in him unless and until he attained the age of 25

years? Having reached such conclusion, it is unnecessary to set out *in extenso* the allegations of the pleadings. It will be sufficient to an understanding of the case to state that the two gentlemen named in the will as executors never qualified as such; that shortly after the death of the testator, and while a contest of the will was still pending, the Omaha Loan & Trust Company brought suit in the district court for Douglas county to foreclose defaulted interest coupons upon a $40,000 mortgage which had been executed and delivered to it by Harrison W. Cremer in his lifetime. The principal mortgage at the time of such foreclosure was held by the defendants Anna B. Homer and Margaret H. Davis, under an assignment from the said loan and trust company. In the foreclosure suit referred to, the trust company made defendants: The devisees named in the fourth and fifth items of the will; the widow and all of the heirs at law of Harrison W. Cremer, deceased; Housel and Millard, named as executors in the will, and William Wallace, who had been appointed special administrator. All of said parties were duly served with summons. This included all of the persons then living who would take the devise over in the event of the death of Cedric E. Cremer, without having married, prior to his reaching the age of 25 years. A decree of foreclosure was entered, and the property sold thereunder to the Omaha Loan & Trust Company. The sale was duly confirmed, and a sheriff's deed issued to said company. The company subsequently conveyed the property in controversy to the Omaha National Bank. Some time thereafter, and before any administrator *c. t. a.* had been appointed, Mrs. Homer and Mrs. Davis foreclosed the principal mortgage. They made defendants all of the persons who had been made defendants in the first foreclosure, with others. Service of summons was duly had upon all of such defendants, and a decree of foreclosure entered. The premises were sold under such decree to said Homer and Davis. The sale was duly confirmed, and a deed issued to them therefor. Subsequently

thereto the plaintiffs, William L. Shackley and Edward S. Flor, were appointed administrators, with the will annexed. After having duly qualified, they instituted this suit.

The prayer of the petition is that an account be taken of the rents and profits collected by defendants since August 29, 1896; that plaintiffs be permitted to redeem from said mortgage; of the amount necessary to be paid in order to make such redemption; that defendants be required to acknowledge satisfaction of said mortgage upon the records of Douglas county and deliver to plaintiffs possession of said real estate; that the cloud cast on plaintiffs' title to said real estate by said sheriff's deeds be removed, and for such other and further relief as justice and equity may require. The district court found that the facts alleged in the petition and disclosed by the evidence fail to show that the plaintiffs have any equitable rights in and to the premises in controversy, and dismissed their suit for want of equity, with costs.

Plaintiffs contend that the law gives the property in fee simple to the executors "and their successors" in trust; that Cedric E. Cremer never had any title, legal or equitable, to the property; that the trusts imposed by the law are annexed to the office of the executors, and not to the persons nominated as executors in their individual character; that Charles C. Housel and Willard B. Millard, having failed to qualify, never became executors and did not take title to the property; that upon the appointment and qualification of appellants as administrators with the will annexed, they were vested with the fee title to the property in trust for the uses, objects and purposes specified in the will; that appellants' title relates back to the death of the testator; that the owner of the fee title to the property was not before the court in either of the suits to foreclose the mortgage; that the fee was not cut off by the decree, or the pretended sale thereunder, in either suit, and that appellants are, therefore, entitled to redeem the property from the mortgage.

The sympathy of the writer for the young man who has lost what his father doubtless thought was a valuable devise is such that he spent several days in an industrious but vain attempt to sustain plaintiffs' contention and permit a redemption. An exhaustive examination of the authorities forces the conclusion that to do so would be to disregard the plain intention of the testator as expressed in his will, and to give no heed to the holdings of many eminent courts in numerous cases decided both in this country and in England, where similar questions so often arise that in 1829 (*Duffield v. Duffield,* 3 Bligh (Eng.) 260, 311) Lord Eldon said: "In *Boraston's Case* (2 Coke (Eng.) 16, 19) it appears from the margin of the report, that there were then (the twenty-eighth year of the reign of Queen Elizabeth) one hundred and seventy authorities upon the same subject." He added: "Yet the circumstances of this case are not precisely similar to those of any preceding case." In the decisions of the high and able courts of a country so prolific of cases of a similar character, in all their varying forms, involving vast estates, we may well expect to find careful consideration and elucidation of the question.

With the provisions of the will in mind, let us see what the courts of England have held. A review of the most noted cases, in chronological order, will be both interesting and instructive.

In *Boraston's Case,* referred to by Lord Eldon, *supra,* the will gave to Thomas Amery and Amphillis, his wife, certain real estate "for eight years next after my decease," upon certain conditions, "and after the term of the said eight years, the said upper part to remain to my executors until such time as Hugh Boraston shall accomplish his full age of 21 years, and the mean profits to be employed by my executors towards the performance of this my last will and testament; and when the said Hugh shall come to his age of 21 years, then I will he shall enjoy the said upper part to him and to his heirs forever." Hugh died when about the age of nine years. After his

death and after the death of Thomas and Amphillis, Philip Boraston, as brother and heir of the said Hugh, entered into the lands, and demised them to William Ambrye. Subsequently Constance Brand and Margaret Davies, granddaughters of the testator, Thomas Boraston (their husbands joining) claiming that no remainder was vested in Hugh Boraston until he attained his age of 21 years, and that forasmuch as Hugh never attained his said age, the land never vested in him, but remained in the heirs general, executed to plaintiff Richard Hynde a seven years' lease of the lands in controversy. Ambrye, who held under his demise from Philip, by command of Philip, entered upon the land, and Hynde brought ejectment. The court sustained the contention of defendant that the executors had a good term for 12 years, which was not determined by the death of Hugh, and held: "The case at bar is no other in effect, but that a man devises his lands to his executors (for the payment of his debts) *until his son shall or should have come to his full age (of twenty-one years)* the remainder to his son in fee; for altho' these are adverbs of time, when, etc., and then, etc., yet they do not amount to make anything to precede the settling of the remainder, no more than in the common case. A man leases land for life or years, and after the decease of the lessee, or the term ended, the remainder to another, yet it shall remain presently; for when these adverbs refer to a thing, which must of necessity happen, there they make no contingency, and it is certain that every man must die, for *statutum est hominibus femel mori,* and every term will end; for *tempus edax rerum;* and in the case at bar, certain it is, that Hugh would or might have accomplished his age of 21 years, which are in this case of a will, all one in construction of law. So that these adverbs (*then* and *when*), in our case, are demonstrations of the time, when the remainder to Hugh shall take effect in possession, as in the said cases of a lease for life, and lease for years, and not when the remainder shall vest;

*quod fuit concessum per totam curiam."* And judgment was given that the plaintiff should take nothing by his bill. That case has been followed with scarcely any deviation to the present day.

In *Goodtitle* d. *Hayward v. Whitby*, 1 Burr. (Eng.) 228, R. P. devised his lands to Thomas Hayward and John Bates, and the survivor of them, and the heirs of such survivor "in trust, that they and the survivor of them, his heirs and assigns, should lay out, employ and bestow the rents and profits of the devised premises, for the maintenance, education, bringing up and putting forth into the world, of Thomas and John Hayward, sons of the testator's sister Elizabeth Hayward, during their minorities; and when and as they should respectively attain their ages of 21, then to the use and behoof of the said sons of his sister Hayward, the said Thomas Hayward and John Hayward, and their heirs, equally." The testator then made the said two trustees, Thomas Hayward and John Bates, his executors. Thomas Whitby claimed as testator's heir at law. Thomas Hayward, the elder of the testator's said two nephews, died under the age of 21 years, and without issue. Upon his death (his brother John being then under age), Whitby was by the trustees let into his moiety. John, having come of age, brought ejectment, claiming the moiety of his deceased brother, as well as his own moiety. The question construed by the court was "whether this moiety of Thomas, the deceased brother, belongs to John Hayward, either as heir to his brother, or as surviving joint tenant; or whether it belongs to Thomas Whitby, as heir at law of the testator as an undevised estate." In the opinion by Lord Mansfield, it is said: "Testator died. T. H. and J. B., the two trustees, entered into possession. Then Thomas Hayward, one of the two nephews and devisees died, under age, and without issue. Then the trustees let the now defendant, the testator's heir at law, into possession of his moiety. But it is not material what *they* did among *themselves;* that will not affect the *right*

of the plaintiff. The question is, 'whether the estate *vested* immediately in the two nephews, upon the death of the testator, or *remained in contingency,* till their respective coming of age:' and, consequently, 'whether this moiety belongs to John Hayward, upon the death of his brother Thomas, either as his heir at law, or as survivor; or whether it descends to the heir at law of the testator, as being undevised.' In the construction of wills, adjudged cases may very properly be argued from; if they establish general rules of construction, to find out the intention of the testator; which intention ought to prevail, if agreeable to the rules of law. Here it is agreed that a fee is devised to the nephews; but it is made a question 'whether it be a fee depending upon a precedent contingency; or, an immediate fee.'" He then laid down two rules, the second of which is: "Where an absolute property is given, and a particular interest given, in the *meantime,* as *'until* the devisee shall come of age, etc., and *when* he shall come of age, etc., then to him, etc.,' the rule is, that that shall not operate as a condition precedent; but as a description of the time when the remainderman is to take *in possession.* And to this purpose is *Boraston's Case,* * * * where this doctrine is fully laid down and explained. * * * Here, upon the *reason* of the thing, the infant is the object of the testator's bounty; and the testator does not mean to deprive him of it, in *any event.* Now suppose that this object of the testator's bounty *marries,* and *dies* before his age of 21, leaving children; *could the testator intend,* in such an event, to *disinherit him?* Certainly, he could not. And as to the testator's heir at law, his heir at law is only to take what the testator has not devised away from him. But in the present case the testator takes no notice of this Thomas Whitby, who is indeed stated to be (but it doth not appear *how*) his heir at law. And he does not except any thing out of the interest he has given to his nephews; he only makes a trust, to be executed for *their benefit;* and devises *nothing* for the benefit of the *trus-*

*tees,* who were also his executors. And this is *only a chattel*-interest, which *cannot last twenty-one years.* On the rule in Matthew Manning's case, here is (at the utmost) only an *exception,* by this devise to the trustees, *out of* the absolute property given to his nephews. It is so plain upon the true intent and meaning of this will, that it is a shame to cite cases upon it. * * * So here, the *property* is *absolutely given:* and the limitation is only of the *trust.* Therefore, upon the whole, he held the present case to be: An *immediate* gift to the two nephews; with a trust to be executed for their benefit, during their minority."

The case of *Bromfield v. Crowder,* 1 B. & P. N. R. (Eng.) 313, will be found to be a leading case very generally cited in subsequent decisions. In that case, John Davenport, the testator, by his will, after charging his real and personal estate to the payment of his debts, legacies and funeral expenses, directed his executors to pay to his nephew, the defendant Samuel Crowder, an annuity of £50 during his life, payable quarterly, upon the express condition that "if the said Samuel Crowder should at any time mortgage, sell, assign, dispose of, or in any manner incumber the same or any part thereof, then and from thenceforth the future payments of such annuity should cease and determine and be at an end to all intents and purposes whatsoever, and the same should be considered as if no such bequest had been made." He then gave to his godson John Davenport Bromfield, the plaintiff in the cause, the sum of £100, provided he lived to attain the age of 21 years, otherwise such legacy was not to be paid or payable. He then devised unto his wife Elizabeth Davenport and her assigns all his real estate for life. After her decease, to his cousin Joshua Rose, his heirs and assigns forever. He subsequently made a codicil revoking that part of his will which gave his estate to Joshua Rose and his heirs forever, in case he survived testator's wife, and gave the estate to Joshua during the term of his natural life in case he survived the wife,

"and at the decease of Mrs. E. Davenport and Mr. Joshua Rose, or the longest liver of them, I give all my real estate, of what nature and kind soever, to my godson John Davenport Bromfield, son of Charles Bromfield of St. Ann's, Liverpool, if the said John Davenport Bromfield shall live to attain the age of 21 years; but in case he die before he attains that age, and his brother Charles Bromfield shall survive him, in that case I give my real estate to Charles Bromfield his brother, if he lives to attain the age of 21 years, but not otherwise, but in case both the above-mentioned boys die before either of them attain the age of 21 years, then I give my real estate to John Vale my godson, * * * and his heirs forever." The testator died, leaving defendant Samuel Crowder, his nephew and heir at law. Subsequently to his death, a bill was filed on behalf of the creditors to have a portion of the estate sold to pay debts, which was done. Pending these proceedings, Elizabeth Davenport died and on her death Joshua Rose entered into possession. Subsequently Joshua died. The plaintiff John Davenport Bromfield, being then an infant under the age of 21 years, in June following, by his next friend, filed his bill in chancery against the defendant, claiming the unsold part of the real estate, praying "that his right to the said real estates upon the death of the said Joshua Rose might be declared." Defendant answered, and the case came on to be heard before the master of rolls. Defendant contended that plaintiff had no right or title to the estates, because the devise to plaintiff and to his brother Charles and to John Vale were contingent remainders limited upon the estates for life devised to Elizabeth Davenport and Joshua Rose, and that inasmuch as the preceding particular estates determined and were at an end before the events happened on which the said premises were to become vested, such remainders could not then take effect, and subsequently the said estates remaining unsold did, upon the death of Joshua Rose, result and then belonged to defendant Crowder as the heir at law of the testator. The master of the rolls or-

dered a case to be made for the opinion of the judges
upon the following question: "Whether the plaintiff
John Davenport Bromfield, in the events which have
happened, takes any and what estate or interest in the
freehold estates of the said John Davenport the testator?"

In his argument, counsel for plaintiff makes this terse
and well-supported statement: "The law favours vested
estates, because it dislikes estates in abeyance and con-
tingency; and there are many cases where, from the im-
port of the will, it should appear that the estate was in
contingency, and yet it has been holden to be vested."
The opinion by Sir James Mansfield, Ch. J., after stating
the will, said: "All the testator's real estate is given to
the plaintiff immediately on the death of the preceding
devisees, if he live to attain 21; if he die before 21, and
his brother Charles Bromfield survive, then the testator
gives his real estate to the said Charles Bromfield, if he
live to attain 21, but not otherwise. If both die under
21, then he gives it to his godson, John Vale, in fee. The
plaintiff was under 21 at the time of the death of the sur-
viving devisee, and the question is, whether he took any
and what estate in the freehold or copyhold premises?
There does not appear to us to be any distinction between
the freehold and the copyhold. In fact, this is an im-
mediate devise to the plaintiff, to take place on the death
of the two preceding devisees. If so, we must either break
in upon the terms of the will, or give them effect. In the
latter case, there is an end of all argument about the
word 'if.' There is nothing in the will to prove that the
testator meant the plaintiff not to take a vested estate
unless he survived 21. Indeed, the true sense of the thing
is, that the devisor meant him to take it as an immediate
devise in himself, but that it was to go over in the event
of his dying under 21. It must be admitted, that accord-
ing to repeated decisions, no precise words are necessary
to constitute a condition precedent in wills. They must
be construed according to the intention of the parties;
and it would be absurd, considering the various circum-

stances under which wills are made, to require particular
terms to express particular meanings. The apparent in-
tention, as collected from the whole will, must always
control particular expressions. Now the fairest con-
struction that can be put upon this will, independent of
authority, is, that the plaintiff took an immediate vested
estate on the death of the preceding devisees, with a con-
dition subsequent. With respect to the cases, that of
*Edwards v. Hammond* is on all fours with the present.
The circumstance of the devise over being to a stranger
makes no difference;.for it is clear that the testator meant
no one to take his estate unless in the event of the plain-
tiff dying under 21. *Edwards v. Hammond* is neither op-
posed nor weakened by any case. No doubt the general
meaning of the word 'if' implies a condition precedent,
unless it be controlled by other words. But, in this case,
there is a variance between the expression and the mean-
ing, and the case of *Edwards v. Hammond* sanctions us
in giving effect to the latter. On these grounds, we are
of opinion that the estate vested in the plaintiff on the
death of the preceding devisees; and the expression, 'all
my estate,' is so general as to pass an estate in fee. Be-
sides, it would be an absurdity on the face of the will, to
construe it only an estate for life.  *  *  *  This case has
been argued before us by counsel, and we are of opin-
ion that, in the events that have happened, the plaintiff
John Davenport Bromfield takes a vested estate in fee
simple in the freehold and copyhold estates of the said
John Davenport the testator, determinable upon the con-
tingency of his dying under the age of 21 years."

In *Doe* d. *Hunt v. Moore*, 14 East (Eng.) 601, James
Moore, the testator, gave "John Moore, son of my said
cousin John Moore aforesaid, *when he attains the age of
twenty-one years* (certain real estate), to hold to him his
heirs and assigns forever; but in case he should die before
he attains the age of 21 years, then I give and devise the
last mentioned estate to his brother James Moore, when
he attains the age of 21 years, to hold the same to him,

his heirs and assigns for ever. Also, I give and devise to the said James Moore, *when* he attains the age of 21 years (certain real estate), to hold to him his heirs and assigns for ever; but in case he should die before he attains the age of 21 years, then I give and devise the four last-mentioned estates to his brother Robert Moore, son of my said cousin John Moore, when he attains the age of 21 years, to hold to him his heirs and assigns for ever. Also I give and devise to the said Robert Moore, *when* he shall attain the age of 21 years (certain real estate), to hold the same to him his heirs and assigns forever; but in case he shall die before he shall attain the age of 21 years, then I give and devise the six last-mentioned estates, * * * to his brother Charles Edward Moore, * * * When he attains the age of 21 years, to hold to him, his heirs and assigns forever; but in case he shall die before he attains the age of 21 years, then I give and devise the said seven last-mentioned estates to all the daughters of my said cousin John Moore aforesaid, equally, share and share alike." Testator died, leaving Sarah Hunt and Samuel James Dawes, two of the lessors of the plaintiff, as his heirs at law. Upon the death of the testator, John Moore, the defendant, and Edward Moore, in the name and on behalf of the said John Moore, the son, James Moore, Robert Moore, and Charles Edward Moore, the devisees named in the will, entered into the possession of the seven last-mentioned estates, and are now in possession thereof. The devisees John, James, Robert and Charles Edward Moore, the sons of the testator's cousin, John, were all under the age of 21 years. Elizabeth, the only daughter of testator's cousin, had attained the age of 21 years. The question reserved was whether the lessors of the plaintiff, or any or either of them, as heirs at law of the testator, or otherwise, take any, and what estate or interest in the said seven devised estates, or in any of them. The opinion was by Lord Ellenborough, C. J. After stating the case, the opinion states: "On behalf of the plaintiff, it was contended that the devisees at-

taining the age of 21 years was a condition precedent to any estate vesting in them, and that in the meantime the same descended to the lessors of the plaintiff, who were the heirs at law of the testator. And the cases of a bequest of *personal* estate were relied on, where it has been held that a legacy given to one, if or *when* he shall attain 21, lapses in the event of the legatee dying under 21. (Citing cases.) And it was argued that there was no distinction between devises of *real* and bequests of *personal* estate in this respect. But that is not so; for the rules by which *legacies* are governed are borrowed all or the greater part from the civil law; whereas the decisions on the devises of *real* estate have established a different rule; and, according to them, a devise to A *when he attains* 21, to hold to him and his heirs, and if he die under 21, then over, does not make the devisee's attaining 21 a condition precedent to the vesting of the interest in him; but the dying under 21 is a condition subsequent, on which the estate is to be devested. (Citing cases, the last of which is *Bromfield v. Crowder, supra,* which latter case was affirmed in the House of Lords.) These we consider as authorities precisely in point, especially the last case (*Bromfield v. Crowder*), the pendency of which in the House of Lords was the occasion of our judgment in this case being deferred. To which may be added *Goodtitle v. Whitby,* 1 Burr. (Eng.) 228, (*supra*). These authorities were attempted to be distinguished, on the ground that they were cases of a *remainder,* and not of an *immediate devise,* as in the case here; but that forms no substantial ground of distinction; the estate vests *immediately,* whether any particular interest is carved out of it to take effect in possession in the meantime, or not. * * * We are therefore of opinion that in this case the plaintiffs, who are the heirs at law of the testator, did not take any estate or interest in the premises so devised."

In *Doe* d. *Roake v. Nowell,* 1 M. & S. (Eng.) 327, Sarah Trymmer devised her freehold estate "to my said nephew John Roake for his life, on consideration that out of the

rents thereof he do from time to time keep such estates in proper and tenantable repair, and on the decease of my said nephew John Roake, I devise all my said estates (subject to and chargeable with the payment of thirty pounds a year to Ann, the wife of the said John Roake for her life * * *) *to and among his children lawfully begotten, equally, at the age of 21, and their heirs, as tenants in common. But if only one child shall live to attain such age, to him or her, and his or her heirs, at his or her age of 21; and in case my said nephew John Roake shall die without lawful issue, or such lawful issue shall die before 21,* then I devise all the said estates (chargeable with said annuity) to and among my said nephews and nieces, Miles, Thomas, John, James, and Sarah Pinfold, and Susannah Longman, or such of them as shall be then living, and their heirs and assigns forever." The testatrix died, leaving John Roake, the devisee, surviving. Roake was then a widower, and had no issue. On testatrix' death, he entered upon the premises. He subsequently married and afterwards had the four lessors of the plaintiff, his only children. He subsequently "levied a fine *sur conuzance de droit,* etc., on the premises, with proclamations to the use of himself in fee, in pursuance of a covenant contained in an indenture made on the 5th of November in that year. Two of the lessors of the plaintiff were born before the execution of the indenture and levying the fine above mentioned. In Trinity term, 1797, J. Roake also suffered a recovery of the premises to the use of such persons as he should appoint, and on 21st May, 1802, by deeds of lease and release appointed the same to the defendant in fee. J. Roake was in possession of the premises, as devisee under the will at the date of the said indenture and fine, and died on the 13th of February, 1803, leaving the four lessors of the plaintiff him surviving, being then all infants under the age of 21 years. The two first lessors of the plaintiff have since attained their respective ages of 21 years, subsequently to which and before the date of the demises

in this ejectment an actual and formal entry was made by the plaintiff's lessors respectively upon the premises in question for the purpose of avoiding the operation of the fine and recovery. The question for the opinion of the court is what interest (if any) the lessors of the plaintiff, the children of John Roake, or any of them, take under Sarah Trymmer's will? and whether the fine or recovery has barred their title." In the opinion, Lord Ellenborough, C. J., says: "I think this case concluded by *Bromfield v. Crowder;* which was very fully considered. That was a devise in remainder of all the testator's estate to J. D. Bromfield, if the said J. D. B. should live to attain the age of 21, but in case J. D. B. died under 21, and C. Bromfield should survive him, then over; and it was resolved that J. D. Bromfield took a vested estate determinable upon the contingency of his dying under 21. After that decision came the case of *Doe v. Moore,* which was an immediate devise of the testator's real estate in fee to J. Moore, when he attained the age of 21, but in case he died before 21, then to his brother; and there it was held that J. Moore took a vested estate. So that it appears whether the devise be in remainder or an immediate devise, there is no substantial distinction. Here the words of the devise, after the decease of J. Roake, are to and among his children equally at the age of 21, but if only one child shall live to attain such age, to such child at the age of 21; and in case J. Roake shall die without issue, or such issue shall die before 21, then over. I see nothing in this devise to distinguish it from the above cases. The consequence is that the children must be considered as taking vested remainders." This case was appealed to the House of Lords, and is reported in 5 Dow (Eng.) 202, under the title of *Randoll v. Doe* d. *Roake.* This report of the case contains elaborate arguments by counsel on either side, in which *Bromfield v. Crowder, Doe* d. *Roake v. Nowell, Goodtitle* d. *Hayward v. Whitby, Doe* d. *Hunt v. Moore, supra,* and *Edwards v. Hammond,* commented upon in

*Bromfield v. Crowder, supra,* are all cited and discussed. The opinion by Lord Eldon states: "In either view of this case it is a case of hardship. If the fine should be destroyed, some of the parties' purchasers may be damnified; and if not, then the devisees will be deprived of the estates. But in the view of hardship, we have nothing to do with it; and after a careful consideration of the special verdict, and all that appears within the four corners of the instrument, the nature of the case, the authorities, and effect of the whole of the will, it is my humble opinion that this judgment ought to be affirmed."

*Phipps v. Ackers,* 9 Cl. & Fin. (Eng.) *583, is another House of Lords case, and is a leading case, very generally cited in subsequent decisions. In that case the syllabus reads: "A testator gave all his real and personal estates to trustees; and as to his lands at W., which he held in fee simple, he directed that the trustees should stand seised thereof, in trust to convey the same to G. H. A., 'when and as soon as he should attain his age of 21 years'; but in case he should die before he attained that age, without leaving issue of his body, then that the said lands at W., given and devised to him, should sink into the residue of the testator's real and personal estates; and he gave the residue to J. C. At the testator's death G. H. A. was only 12 years of age. *Held,* that an equitable estate in fee in the lands at W. vested in G. H. A. immediately on the testator's death, liable to be devested in the event of his dying under 21 without leaving issue of his body."

At the time of the testator's death, his beneficiary, G. H. Ackers, was about 12 years of age. He attained his age of 21 years in 1833. Two years prior thereto, Mrs. Phipps, the plaintiff, testator's heiress at law, filed a bill in chancery against the acting trustee and G. H. Ackers, and others, stating the will, and also that the rents received by the trustee amounted to a considerable sum. The bill prayed, among other things, that it might be declared that plaintiff was entitled to the rents and profits from

the death of the testator until such time as G. H. Ackers should attain 21 years of age. A demurrer to the bill for want of equity was allowed. The report contains elaborate argument by counsel on either side. (Citing substantially all of the cases above noted, with others.) Counsel for G. H. Ackers, in their argument, say: "If G. H. Ackers should die under 21 and without issue, the Wheelock estate was to pass to the residuary devisee, James Coops; but if G. H. Ackers attained 21, the trustees were to convey the estate to him; or if he died under 21, leaving issue, the issue were to take it; and yet it is contended that this was not a vested estate. It is sufficient to look at the will, without the aid of cases, to see that this was a vested estate, because it is manifest that the ancestor must take in order that the issue might take, unless the solecism is to be supported that an heir can take as heir without an ancestor." A very terse statement, indeed, of the question.

The opinion was delivered by Lord Ch. J. Tindal, in the course of which he says: "In order to answer your Lordships' question, it is not necessary for us to say what would be the legal effect of a simple devise to A. and his heirs when or if he shall attain 21, without any concomitant provisions calculated to show whether the testator did or did not mean to treat the attaining 21 as a condition precedent. In such a case Mr. Fearne may be right in the opinion found among his posthumous works, that until the devisee attains the prescribed age, he takes no interest whatever in the devised lands. But whatever might be the true meaning of such a devise if it should occur by itself, there is ample authority for saying that such words may, from the context, be taken not to indicate the time when the estate is to vest, but to point out an event on the happening of which an estate already vested is to be devested in favor of some other person. And the cases on this subject appear to be resolvable into two classes: First, those in which the courts have relied on the circumstance that the estate,

prior to the attainment of the age of 21, has been given to some third person, either for the benefit of the devisee himself, as in *Goodtitle v. Whitby,* or for the benefit of some other persons to endure during the minority, as in *Boraston's Case* and *Mansfield v. Dugard;* and, secondly, those cases in which the estates are given over in the event of the devisee dying under 21, as in *Edwards v. Hammond, Bromfield v. Crowder,* and *Doe d. Hunt v. Moore.* The first class of cases proceeds on the ground that the estate given to the devisee on his attaining 21, is in fact only a remainder, taking effect in its natural order, on the determination of the preceding estates; and that the attaining the prescribed age in such a case no more imports a condition precedent than any other words indicating that a remainderman is not to take until after the determination of the particular estates. The second class of cases goes on the principle that the subsequent gift over in the event of the devisee dying under 21, sufficiently shows the meaning of the testator to have been that the first devisee should take whatever interest the party claiming under the devise over is not entitled to, which of course gives him the immediate interest, subject only to the chance of its being devested on a future contingency. Whether the doctrine on which this second class of cases has rested was originally altogether satisfactory, is a point which we need not discuss. It is sufficient to say that it clearly has been established and recognized as a settled rule of construction, not only in the courts below but also in your Lordships' House, and that rule appears to us clearly to govern the case put to us by your Lordships: in conformity with which rule, therefore, we beg leave to state, that on the question put to us, we are of opinion that G. H. A., on the decease of the testator, took an estate in fee simple in the lands and hereditaments at W., subject to be devested in the event of his dying under 21 and without issue."

On further consideration of the case, the Lord Chancel-

lor, on behalf of the House, stated: "The testator, by his will, devised his estate to trustees; and with respect to the Wheelock estate, the estate in question, he directed that the trustees should stand seised and possessed of it, in trust, to convey and assure it to George Holland Ackers, his godson, when and so soon as he should attain the age of 21 years, but that if he should die under the age of 21 years without leaving issue of his body lawfully begotten, in that case the estate should form part of his residuary estates, which he devised to another person. The question is, under this devise, what estate George Holland Ackers took in the Wheelock estate? * * * The object which your Lordships had in view was, that the learned judges should review the cases of *Doe* d. *Hunt v. Moore* and *Bromfield v. Crowder*, and other cases of that class. The judges, after consideration, unanimously pronounce this, as their opinion, that George Holland Ackers took a vested estate in fee in the Wheelock estate, liable to be devested in the event of his dying under 21 without leaving lawful issue. I am, for one, perfectly satisfied with that decision of the learned judges, and I have no doubt my noble and learned friends concur with me in that opinion; and the only question, therefore, that remains to be considered is this, whether a different construction should be put on this will, which conveys an equitable estate, from that which the learned judges have put upon the will as applied to a legal estate; or, in other words, whether the direction to convey makes any difference with respect to the disposition of the property? I am clearly of opinion that it does not; and I agree entirely in what fell from Sir William Grant, in the case of *Stanley v. Stanley*, that the right is not affected by the direction to convey, but that the conveyance must conform to the right, and that the will itself is an equitable conveyance, until that is displaced by the legal conveyance which is directed to be made. I am of opinion, therefore, that in this case George Holland Ackers took an equitable vested estate in fee in the Wheelock

estate, and that it was devested on his dying under the age of 21 years without leaving lawful issue. The consequence of this is that the judgment of the vice-chancellor must be affirmed."

Lord Brougham also wrote an opinion in the case, in the course of which he says: "We may then assume that if this devise had been to George Holland Ackers directly, the legal estate, the estate given, would have been vested and not contingent. The only question that remains is, whether the interposition of trustees, the trust being declared to assign, convey, and assure the premises (not to receive the rents and profits—that was *Stanley v. Stanley*, but only to convey) to George Holland Ackers, when and so soon as he shall attain 21 years makes any difference, and converts the vested into a contingent interest. It was contended, that because the immediate interest is vested in the trustees, and that they are only directed to convey and to assign to George Holland Ackers, when he is of age, the act done to entitle George Holland Ackers is postponed till that time, and his interest therefore only vests at that time. But there can be no doubt that the act which entitles him is the devise; from this he derives his interest, though an equitable interest; and the only difference between his case and that of a devisee without trustees interposed or directed to convey, is that the legal estate remains in the trustees during his minority, and that the equitable estate vesting in him during that minority would be devested upon his decease under age. The inclination certainly should always be to make the rules of courts of equity conform as much as possible to the principles recognized at law; and I can see no reason whatever for dealing upon different principles with the vesting of an equitable and of a legal interest, in respect to the present question.  *  *  *  Upon the whole, I can see no reason to doubt that the estate, in the present case, vested immediately in George Holland Ackers, determinable upon his dying under the age specified, the trustees taking an interest for his behoof, limited to his minority."

When this case was originally commenced, G. H. Ackers, James Ackers (formerly James Coops, the devise to whom was to pass to him when he attained the age of 24 years, provided he gave security to do certain things and should take the surname of Ackers), and Benjamin Williams, trustee (his co-trustee Hobson refusing to join), were made defendants. (*Phipps v. Williams,* 5 Sim. (Eng. Ch.) *44.) They separately demurred generally. In concluding his opinion, the vice-chancellor said: "The consequence, therefore, is that the demurrer of George Holland Ackers must be allowed and the demurrer of James Ackers must be overruled. And as to the demurrer of the trustees, it should never have been put upon the files of the court at all." Why not? Because the estate having vested upon the death of the testator in G. H. Ackers, and, the controversy between Phipps and G. H. Ackers and James (Coops) Ackers, involving simply the question of when and in whom the estate vested, it was a matter of no concern to the trustees. They were merely the depositories or holders of the naked legal title of the estate, the equitable and actual title to which was vested in their *cestui que trust,* the devisee named in the will.

In a much later case (*Browne v. Browne,* 3 Sm. & G. (Eng. Ch.) 568), the high court of chancery reviews a number of the authorities cited, and also considers *Festing v. Allen,* 12 Mees. & Wels. (Eng.) *279, cited in some of the cases as supporting the doctrine of a contingent remainder. The vice-chancellor in the opinion says: "The question in this case is, whether the devise in trust for all and every the child and children of Richard Staples Browne, who should live to attain the age of 21, is, upon the true construction of the whole will, a contingent remainder. A devise in these terms uncontrolled by anything in the context certainly creates a contingent remainder. But in this case the words of gift are preceded and followed by various limitations. It has long been established that words of gift in a will, which taken by themselves would make the gift contingent, may be con-

trolled and qualified by the terms of the next limitation or by other expressions in the will, so as to justify the construction that the devisee takes an immediate, although defeasible, estate." In considering *Festing v. Allen,* which was a decision by the court of exchequer, the learned chancellor says: "The view expressed by the court of exchequer of the cases of *Doe v. Moore,* and *Phipps v. Ackers,* is not supported by any just appeal to previous decisions, or illustrated by any force of argument on established principles of law. On the contrary, it affects to discredit repeated decisions of the House of Lords, which have for generations governed the right to property on principles heretofore, and, it is to be hoped, still, sufficiently established, and being established not to be shaken without public mischief. '* * * It is a rule of law that an estate in remainder must take effect *eo instante* that the particular estate determines; and if the remainder be limited on a contingency which has not happened when the particular estate determines, it must fail. To modify the intolerable hardship of defeating the clear intentions of testators, it is an established rule of construction that in doubtful cases a remainder shall, if possible, be construed to be vested rather than contingent. For this purpose words of contingency are as much as possible to be treated as referring rather to the period when the remainder is to become vested absolutely and indefeasibly, than as preventing the remainderman from taking any present interest, and thereby altogether losing the estate. This rule is the foundation of that long series of decisions in which it has been variously applied, from *Boraston's Case* downwards. It is a rational and intelligible rule, repeatedly affirmed and applied by the House of Lords." The chancellor then considers *Bromfield v. Crowder* and *Doe v. Nowell, supra,* and says: "In each of these cases (and in others of the same kind) the full event upon which alone, in the words of gift, the estate was to arise, had not taken place; yet in favor of the intention manifested in the more general language of

the gift over, the remainder was treated by the House of Lords as vested before the full event on which the gift was made to depend. * * * In the present case the language of the gift over in default of issue, is upon principle and authority suffciently large to show the testator's intention, that the gift over should not take effect if there were any children (for in cases like this the word 'issue' is held to mean children) who might live to attain the age of 21. These .words of qualification are sufficiently strong, unless the decision in *Festing v. Allen* be considered an authoritative decision. The court of exchequer, indeed, declared that they did not feel much doubt (if they felt any doubt at all) as to that case. They did not affect to reconcile their decision with the decision of the House of Lords in *Randoll v. Doe,* nor with the principle of that case and the case of *Bromfield v. Crowder;* nor does it seem to have occurred to them that there was anything startling in treating the gift over as one to take effect only on the occurrence of that very event which would have defeated it, or on the event of there being no children at all. The old maxim, *'Ex antecedentibus et consequentibus fit optima interpretatio,'* is a sound rule in the construction of instruments. To magnify words of contingency by a narrow and microscopic view, which excludes the fair operation of the context, is not consistent with established principles of construction, or likely to produce any other than an erroneous result. Where the court of exchequer resolved to review decisions of the House of Lords, and to restrain and discredit, or evade the application of a principle established by the highest authorities, a profound consideration of the question might have been expected, and the fruits of that consideration to justify so extraordinary a course might have appeared in some overwhelming force of reasoning and illustration, to show that words of contingency incorporated in a gift have a more uncontrollable force when applied to the description of a person than of an event. The reports of the two other cases, in which the decision

in *Festing v. Allen* has been followed, afford nothing to increase the inadequate weight of that case. It is satisfactory to find that there are at least two subsequent cases in which it has not been followed, and that the Vice-Chancellor Knight Bruce, in the case of *Riley v. Garnett,* preferred adhering to older authorities so often affirmed by the House of Lords. * * * Upon the whole, therefore, guided by an intelligibile principle, sanctioned by the highest authorities, and not shaken by any adequate weight of subsequent decision or argument, the true construction of this will seems to be that the plaintiff, as the only child of Richard Staples Browne, is devisee in fee of an estate in fee simple, determinable in case of his dying under the age of 21. The decree must be to that effect."

We will now consider a few of the cases from our sister states.

In *Hughes v. Hughes,* 12 B. Mon. (Ky.) 115, the will gave "to Charles S. Hughes, Mary E. Hughes, and Sarah F. Hughes, children of Richard F. Hughes, deceased, *when* they become of age, or marry, one tract of land, beginning," etc. The testator had four children and three grandchildren living, the three latter being the children of Richard F. Hughes named in the foregoing devise. On the part of the grandchildren, it was contended that, under the first clause, they acquired a vested interest in the land, with a right to take immediate enjoyment. The court cites and follows *Doe* d. *Hunt v. Moore, Doe* d. *Roake v. Nowell,* and *Bromfield v. Crowder, supra.*

In *Toner, Ex'r, v. Collins,* 67 Ia. 369, the syllabus reads: "The testator bequeathed to his executors, in trust for his children, certain real estate, with the following provision, among others: 'My said executors shall have the management and control of said property by me devised to them in trust for my said children, and they are to have the control and management thereof until they shall get married; and when any of my said children shall marry, with the consent of said executors, any worthy

person, then the part or portion of property herein de-
vised, or the proceeds thereof, * * * shall be and become
the property of said child so marrying, and my said ex-
ecutors shall make the necessary conveyance thereof, so
as to vest the absolute title in said legatee.' *Held,* that
the 'marrying of a child with the consent of the executors
was not a condition precedent to the vesting in him or
her of an interest in the estate, but only a condition for
the termination of the trust as to one so marrying; and
that the will, considered as a whole, vested in the chil-
dren, upon the death of the testator, a present equitable
interest in the estate.  Consequently, where one of the
daughters died at the age of 22, unmarried, and be-
queathed to B. (her fiance) all her property, personal
and real, and all her interest in her father's estate, either
as heir or devisee under his will, *held,* that her death
terminated the trust as to the property bequeathed to the
executors for her use, and they were properly decreed by
the court below to convey the legal title thereof to B."

In *Raney v. Heath,* 2 Pat. & H. (Va.) 206, the third
paragraph of the syllabus reads:  "A will contained the
following clause:  'I give and bequeath my estate, except
what I shall hereinafter name, both real and personal, to
my brother Benjamin B. Heath's children; providing
either of them shall live to the age of 21.  If neither of
them live to be 21, it is my desire that my sister Lilly
Raney and my sister Barbara B. Lee's children have it
equally between them.'  *Held,* that the legacy to the chil-
dren of Benjamin B. Heath vested at the death of the tes-
tator, subject to be divested on the death of all of them
under the age of 21, *and that the same rule applied to
both the real and personal estate.*"  In the opinion,
the court say:  "That the terms of the bequest to
the children of B. B. Heath, standing alone and un-
accompanied with the limitation over, would have im-
ported a contingent legacy as to the personalty, and a
contingent devise as to the realty, is a proposition about
which there is no room for doubt or difference of opinion.

And it is equally clear and well settled upon authority, that the limitation over made it, as to the land, a vested devise; the limitation over in the event of the death of all under age being considered explanatory of the sense in which the testator intended the devisee's interest in the property to depend on his attaining the specified age, namely, that at the specified age it should become absolute and indefeasible. The effect of the construction is to convert the first words, which seem to import a condition precedent and thereby to render the devise contingent, into a condition subsequent, whereby the vested estate of the devisee would be divested or defeated upon failure to attain the age prescribed. This rule of construction as to devises is now settled and established beyond the reach of cavil, by an unbroken series of concurrent decisions, beginning with *Edwards v. Hammond,* * * * followed by *Bromfield v. Crowder,* * * * *Doe d. Hunt v. Moore,* * * * and *Phipps v. Ackers,*" *supra.*

The opinion upon this point concludes: "Upon the rule, then, which obtains in devises, and which I think ought to prevail in a case like this, in which both land and personalty are blended, because the rule is not only clearly settled and undisputed, but is in itself reasonable and ought to be held equally applicable to personalty as to land, I am of opinion that the bequest under consideration was vested and not contingent, and that there is no error in the decree of the court below in so declaring."

In *Roome, Adm'x, v. Phillips,* 24 N. Y. 463, the syllabus reads: "Devise of an estate for life to the testator's father, remainder to the heir-at-law and only child of the testator, 'after the decease of my father, and when he the said child shall become 21 years of age, and become married, and has children, and in case of his said child's decease before that period and after my father's decease, then the said real estate' was given over to other persons. *Held,* that the child took a vested remainder, subject to be divested only on his dying under

the age of 21." In the opinion the court say: "It seems to me it was the clear intention of the testator that his son Elisha, on the demise of John Burrows, the testator's father, should take the estate in fee, upon his arriving at the age of 21 years. He was also to take it, upon such demise, upon his marriage and having children. It vested in him in fee, on the death of the life tenant; and he was entitled to the possession on the happening of either of those events, subject to his being wholly divested on his dying before attaining the age of 21 years, and on the happening of which latter event, the devise over took effect; and it only took effect on his dying before the age of 21." The court then cite with approval *Goodtitle v. Whitby, Bromfield v. Crowder,* and *Doe* d. *Hunt v. Moore, supra.*

In *Kerlin's Lessee v. Bull,* 1 Dall. (Pa.) 175, the syllabus reads: "A testator devised as follows: 'I give and bequeath unto my son A, *when* he arrives at the age of 21 years (a certain tract of land), to hold to him, his heirs and assigns forever.' Afterwards, he bequeathed to his wife the use and profits of all his lands, for the maintenance and education of his children, until his sons should attain the age of 21, etc. A died after the testator, under age, intestate, and without issue, leaving a mother, brothers and sisters. *Held,* that this was a *vested* devise in A and that the estate was to be divided equally among his brothers and sisters." In the opinion the court say: "The *absolute property* is given to *John,* when he should arrive at age, and the use and profits in the meantime to his mother, for the maintenance and education of all the children. This last devise is a *particular* interest, and no more than a chattel interest. The son *John* was the principal object of the testator's bounty, and if he had married, and died before 21 years of age, leaving *children,* he certainly meant not that this estate should go from *them.* This, therefore, was an *immediate gift* to *John,* though he was not to have the *possession* until he came of age. All the cases support this judg-

ment." In like manner, we think that, in the case at bar, Cedric was the principal object of the testator's bounty. That the testator did not intend, in the event of Cedric's marriage before reaching the age of 25, that the property should go from his children, is evidenced by the fact that he expressly provides that it shall go to them in such an event. It follows, therefore, that the devise in question was an immediate gift to Cedric, though he was not to have the possession until he arrived at the age of 25 years, and that the interest of the executors was no more than a chattel interest.

The *Illinois Land & Loan Co. v. Bonner,* 75 Ill. 315, is a well-reasoned case on this question. The opinion is by Sheldon, J., one of the ablest judges who ever graced that eminent court. The eighth paragraph of the syllabus reads: "Where lands are devised to a trustee to be held by him in trust until A shall attain his majority, when the same shall be conveyed to him in fee, this will confer on A a vested estate in fee simple, subject to the prior chattel interest given to the trustee, and, consequently, on the death of A under age, the property will descend to his heir at law. But a devise to A when he shall attain the age of 21 years, standing isolated and detached from the context, will confer a contingent interest only." The ninth paragraph reads: "Where a devise over is made dependent upon the first devisee dying before he becomes of age, or without issue, or any similar event, the devise is equivalent to a provision that the first donee shall take an immediate vested interest liable to be defeated by the happening of the contingency named; and if it does not happen, the estate then becomes absolute and indefeasible." I will not quote further from this well-reasoned opinion. The opinion speaks for itself. It is cited with approval in *Hall v. Waterman,* 220 Ill. 569, 4 L. R. A. n. s. 776.

To the same effect is *Withers' Adm'r v. Sims,* 80 Va. 651.

*Yocsel v. Rieger,* 75 Neb. 180, is also in point. The

syllabus reads: "Where a testator devised lands to his daughter in fee, but with a limitation over by way of executory devise in favor of her brothers and sisters, contingent upon her dying within a definite term of years without surviving issue, and the daughter died within the specified term leaving such issue, the latter succeeded to the estate of its mother in fee simple." The opinion is short and sustains the principle announced in the foregoing cases.

In concluding our citation of cases, we call attention to *Archer v. Jacobs*, 101 N. W. 195 (125 Ia. 467). We will not extend this opinion by quotations from that case other than a few of the paragraphs of the syllabus:

1. "A remainder limited to a certain person on the termination of a life estate vests at the same instant and by the same grant as the life estate, and, although the remainderman cannot enter upon the possession, use, or enjoyment of the property until the termination of the life estate, yet the fee, less the life estate, is in him, and will descend to his heirs if he dies before coming into posssssion, or, as an estate of inheritance, may be aliened by him, or subjected to the claims of his creditors."

3. "Courts will hold a remainder to be vested if it can be done without manifest violation of the intention of the donor."

4. "The uncertainty whether a remainderman will outlive the life tenancy and come into actual possession does not make the remainder contingent."

7. "A clause in a will devising property to testator's grandchildren upon the death of their mother does not indicate an intention to postpone the vesting of the remainder to the date of the mother's death, instead of from the date of testator's death, but merely refers to the time when the remainderman shall come into the enjoyment of the estate."

In the light of the foregoing authorities, it may be said that this rule of law and of construction that we are invoking is well settled. Does the rule apply to the case

at bar?  In applying the rule that "we are to sit in the seat of the testator and construe his will," we must give effect to every expression contained therein, if by any reasonable construction we can give it meaning and legal effect.  Sitting in that seat we find the testator considering the uncertainties of life and the certainty of his ultimate demise.  He is also considering his worldly estate and the natural objects of his bounty.  His youngest child, Cedric, is only a lad of about seven years.  Two other children are minors.  How will he provide for them so as to secure to them a support while they are growing to manhood and womanhood?  They should not only be provided with the necessaries of life, but they should receive an education as well.  While gaining an education they should be free from the cares of business and the management of property.  And so he directs that the properties set out in the second item of his will be placed in the hands of executors, to be held by them in trust until such time as his children may reasonably be expected to have completed their education, at the age of 25 years, respectively, when his executors shall convey to each his or her respective devise; and, pending the arrival of those respective periods of time, he, by the third item of his will, directs that "out of the net income of the real estate mentioned in the next preceding item (item 2) my executors pay the following money bequests, viz., to my beloved wife, Ida Cremer, the sum of fifty dollars per month, monthly, from the time of my death until our youngest child Cedric E. Cremer shall reach the age of 25 years; to each of my three younger children, Leonidas R. Cremer, Mina Cremer, and Cedric E. Cremer, for their education and support, the sum of thirty-three and one-third dollars per month, monthly, from the time of my death until they severally arrive at the age of 25 years. If either of my said sons shall die before reaching the age of 25 years, leaving a widow and children, or either, the payments in this item provided for such son shall, after his death, be made to them, or such of them as shall sur-

vive; but if he leave no wife or child such payment shall cease;" and a like proviso as to his daughter Mina, followed by a provision for two other children by a former wife. Still sitting in the seat of the testator, with an impartial desire to ascertain his will from the words he is using, the conclusion is irresistible that the children are the special objects of his bounty, and that he does not mean to deprive them of it, *in any event.* He not only is trying to secure it to them, at a time when they will be able to care for it, but gives it to their wives, or husband, and children, in the event of their marriage and demise prior to such time.

The further conclusion is equally irresistible that he had no thought or intention of _vesting in his executors anything more than such an interest—"chattel interest," the supreme court of Illinois and other eminent courts have termed it—as would enable them to protect and manage the estate until the children named should respectively attain the age when, in his judgment, they would be out of school and be sufficiently mature to manage it themselves. As said in *Phipps v. Ackers, supra,* their right "is not affected by the direction to convey, but that the conveyance must conform to the (their) right, and that the will itself is an equitable conveyance, until that is displaced by the legal conveyance which is directed to be made." That he intended the property involved in this suit to vest immediately upon his death, in Cedric, subject to the temporary provision for his mother until Cedric reached the age of 25 years, and thereafter in Cedric alone, is beyond the possibility of a doubt. The language employed to express his intention is not susceptible of any other reasonable construction. We therefore hold that, upon the death of Harrison W. Cremer, the full equitable title to the property in controversy vested, *eo instante,* in Cedric E. Cremer, charged with its proportion of the allowance of $50 per month to his mother, Ida Cremer, until he reached the age of 25 years, subject to a defeasance as provided in the will in the event of his

death before attaining that age; and that pending the qualification of the executors named in the will, or the appointment and qualification of administrators *c. t. a.* in the event of the refusal or failure of such executors to qualify, the legal title likewise vested in him, subject to be nominally and temporarily divested by a subsequent qualification of such executors, or the appointment and qualification of such administrators; and that in case of a failure of the executors to qualify, and a failure of the appointment and qualification of administrators *c. t. a.* prior to his reaching the age of 25 years, his title and right of possession of said property would, upon his attaining such age, become absolute in fee simple.

As we have seen, the summons in the foreclosure suit was served upon Cedric and his mother Ida; upon Housel and Millard, named in the will as executors; upon Leonidas R. Cremer and Mina Cremer, the brother and sister of the full blood, who under the will would take the devise over in the event of Cedric's death before reaching the age of 25 years; upon all of the other heirs at law of the testator, and upon the special administrator. This included every person *in esse* who was in any manner interested in either the property or the title. As has been shown, the executors had not then qualified. They could not qualify until the will was admitted to probate. This could not be done until the contest proceedings then being prosecuted were terminated. If the will should be set aside, the title would be in the heirs at law; if sustained, it would be in the devisees until the executors qualified. If not, then it certainly was in the special administrator, subject to the payment of the debts of the deceased. But it is urged that the title was not in either; that it was in abeyance; and that the mortgagee was bound to delay its foreclosure suit until the termination of the contest of the will and the qualification of the executors; that this would not deprive the mortgagee of its remedy, but would simply postpone the enforcement of it. But why should the mortgagee be put to such delay?

It may be said that lawful interest is always a sufficient compensation for delay in the payment of money. While this is true as a general rule, like all general rules it has its exceptions, and this seems to be such a case. The will contest might be prolonged for years, as such contests usually are. During that time the property, which it appears was then not of sufficient value to attract purchasers to the foreclosure sale, might depreciate in value, and the mortgagee be deprived of a large portion of its security. There are at least two reasons why we do not think the mortgagee was required to wait: First, it is contrary to the views of this court that titles to land may rest in abeyance. *Yocsel v. Rieger*, 75 Neb. 180; *Clark v. Fleischmann*, 81 Neb. 445. While this rule was not fully considered in those two cases, it is a rule that has been frequently announced, and one which we believe to be sound. Second, under our constitution every person is entitled to have justice administered without delay; and a mortgagor should not be permitted, in person or by his will, to raise a controversy over the mortgaged property which will delay enforcement of the mortgage in the event of default in payment thereof. The volume of business transacted in this country upon borrowed capital is enormous, and to hold this point as contended for by plaintiffs might prove to be a very serious matter.

After carefully considering the case in all its aspects, we hold that the district court, in the foreclosure suits, acquired jurisdiction over the property and the title, and of all persons interested therein.

The judgment of the district court is, therefore,

AFFIRMED.