Filed 9/7/21 (unmodified opinion attached)

**CERTIFIED FOR PARTIAL PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

THE PEOPLE,

Plaintiff and Respondent,

v.

JOSE ADRIAN PEREZ,

Defendant and Appellant.

F080837

(Super. Ct. No. VCF043238-99)

**ORDER MODIFYING OPINION**
[NO CHANGE IN JUDGMENT]

**THE COURT:**

It is hereby ordered that the partially published opinion filed on August 17, 2021, be modified as follows:

1. On page 6, the first paragraph under heading I. beginning "Section 1437.7" is deleted and the following paragraph is inserted in its place:

> Section 1473.7 permits a person to file a motion to vacate a conviction that is "legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (a)(1).) In adopting and amending section 1473.7, the Legislature considered the problems faced by defendants "who were unaware of the immigration consequences posed by a plea entered many years earlier." (*Vivar*, *supra*, 11 Cal.5th at p. 523.) Although such motions "must be timely" (*People v. Perez* (2018) 19 Cal.App.5th 818, 826), they "ordinarily are brought many years after the plea." (*Vivar*, *supra*, 11 Cal.5th at p. 526 [motion brought nearly 16 years after plea was entered].) Whether a particular motion is timely is governed by subdivision (b) of section 1473.7.

2. On page 13, second full paragraph, the first sentence beginning "A comparison of" is deleted and the following sentence is inserted in its place:

> A comparison of September 14, 2019, with December 23, 2019—the date Perez filed his motion—shows it took Perez 100 days after his removal to Mexico to file his section 1473.7 motion

3. On page 13, second full paragraph, the fourth sentence beginning "In such," the phrase "in 100 days" is inserted between the words "filed" and "after" so the sentence now reads:

> In such circumstances, we find as a matter of law that Perez acted with reasonable diligence in getting his section 1473.7 motion filed in 100 days after his removal to Mexico.

4. On page 17, first full paragraph, fourth sentence beginning "These ties," the phrase "The ties existing at the time of his plea" is inserted in place of the words "These ties" so the sentence now reads:

> The ties existing at the time of his plea are contemporaneous evidence supporting the inference that Perez would have rejected the plea and taken the risk of going to trial to avoid removal from the United States.

5. On page 17, first full paragraph, in the fifth sentence beginning "At the time of his plea," the phrase "was almost 19 and a half years old," is inserted between the words "Perez" and "had" so the sentence now reads:

> At the time of his plea, Perez was almost 19 and a half years old, had spent the last 16 years of his life in the United States, had been a legal permanent resident for approximately five years, and had virtually no ties to Mexico.

There is no change in judgment.

FRANSON, Acting P. J.

**WE CONCUR:**

SMITH, J.

SNAUFFER, J.

Filed 8/17/21 (unmodified opinion)

**CERTIFIED FOR PARTIAL PUBLICATION***

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| THE PEOPLE,<br>Plaintiff and Respondent,<br>v.<br>JOSE ADRIAN PEREZ,<br>Defendant and Appellant. | F080837<br>(Super. Ct. No. VCF043238-99)<br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County. Gary L. Paden, Judge.

Law Office of Allen Broslovsky and Allen Broslovsky for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Galen N. Farris, Deputy Attorneys General, for Defendant and Respondent.

-ooOoo-

In December 2019, defendant Jose Adrian Perez filed a motion pursuant to Penal Code section 1473.7[1] to vacate a 2000 conviction entered after he pled guilty to felony

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of the Background and parts II. and III. of the Discussion.

1 Unlabeled statutory references are to the Penal Code.

theft. The sole ground raised in the opposition to Perez's motion was its untimeliness. At the hearing on the motion, the superior court stated: "While I think there are a bunch of humanitarian reasons why it should be granted, I have to say the motion is denied." On appeal, the Attorney General contends the court properly denied the motion because (1) it was untimely and (2) Perez did not establish he suffered the "prejudicial error" required by section 1473.7, subdivision (a)(1).

The published part of this opinion addresses the meaning of the timeliness provisions set forth in subdivision (b) of section 1473.7, which is a pure question of law and not dependent upon the facts of this case. That subdivision contains a general rule requiring the court to deem the motion timely in certain circumstances. (§ 1473.7, subd. (b)(1).) It also contains a discretionary exception that permits the court to deem the motion untimely if the moving party did not act with reasonable diligence in bringing the motion after specific triggering events. (§ 1473.7, subd. (b)(2).) Thus, the absence of reasonable diligence does not automatically result in the motion being deemed untimely. A superior court has the discretionary authority, after considering the totality of the circumstances, to deem a motion timely even if the moving party did not act with reasonable diligence.

The unpublished portion of this opinion includes our analysis of whether Perez acted with reasonable diligence in filing his motion and our determination that the motion was timely filed. It also includes our analysis of whether Perez demonstrated the existence of an error that was both prejudicial and damaging to his ability to meaningfully understand and accept the immigration consequences of his no contest plea. (§ 1473.7, subd. (a)(1).) Based on our independent review of the cold record in accordance with the principles set forth in *People v. Vivar* (2021) 11 Cal.5th 510 (*Vivar*), we conclude Perez satisfied the requirements of section 1473.7, subdivision (a)(1) and is entitled to relief.

We therefore reverse the order denying the section 1473.7 motion.

## BACKGROUND[*]

Perez was born in Mexico in January 1981. In 1984, when he was three years old, his parents brought him to the United States. His declaration states he has "remained continuously in the United States since." He became a legal permanent resident of the United States when he was about 14 years old. He attended Lindsay High School. He has three children, all of whom are United States citizens. His parents are legal permanent residents of the United States.

In October 1999, a felony complaint was filed that charged Perez with participating in taking personal property means of force from a man in violation of section 211. The offense was committed in an inhabited dwelling.

On March 7, 2000, pursuant to a negotiated plea bargain, Perez pled guilty to one count of felony theft (§ 487, subd. (c)) in exchange for an indicated sentence of two years. The minute order from that hearing included a paragraph that read:

> "( ) Defendant advised and understands the maximum penalties,, consequences of his plea, the possible defenses ( ) consequences of violation of probation ( ) possible deportation if not a citizen of the United States ( ) driver's license will be suspended."

Only the first set of parentheses in this paragraph contained a check mark. The lack of a check mark before the immigration warning of "possible deportation if not a citizen of the United States" indicates that the warning was not given to Perez. The minute order included a space where the name of an interpreter could be entered. This space was left blank, which implies Perez participated in the proceedings using English.

On April 12, 2000, Perez appeared for sentencing and was represented by James Michael Kordell.[2] The superior court sentenced Perez to the midterm of two years in

---

* See footnote, *ante*, page 1.

2 Perez's opening brief asserts he initially was represented by the Tulare County Public Defender's Office and, because of a conflict, his representation was assumed by Kordell, an attorney connected to the Tulare County Conflict Defender's Program.

state prison less credits, imposed a $400 restitution fine, and stated restitution to the victim would remain open. The court also directed Perez to participate in a counseling or education program containing a substance abuse component. With credits, Perez served half of the two-year sentence. The minute order for the April 2000 proceedings, like the previous minute order, contained no name in the space for the interpreter.

When he was released, he was taken into custody by Immigration and Customs Enforcement (ICE) and put into removal proceedings. Perez's declaration stated: "I was eventually ordered removed and deported to Mexico where I was separated from my family for over three years."

In 2008, Kordell, the attorney who represented Perez at his sentencing, pleaded no contest to felony charges of maintaining a place for selling or using methamphetamine. As a result, Kordell was suspended from the practice of law. In 2010, he was disbarred. In June 2015, he died.

On September 3, 2019, the United States Immigration Court in San Francisco held an individual hearing for Perez in case No. A-070-716-459 and ordered that he be returned to Mexico.[3] Later that month, Perez was returned to Mexico.

On December 23, 2019, Perez filed a motion to vacate his conviction pursuant to section 1473.7. The motion was supported by (1) Perez's declaration dated August 29, 2018; (2) a printout from the State Bar of California's website showing a chronology of the license status, discipline, administrative action, and State Bar Court cases involving Kordell; (3) and a copy of Kordell's certificate of death, which was issued by the County of Tulare. Perez's declaration asserts Kordell did not mention anything about immigration and did not tell him that his plea would cause him to be deportable from the United States and to lose his status as a legal permanent resident. Perez also asserts the

---

**3** Perez's motion and the district attorney's opposition list the date of the order as September 13, 2019. We granted our own motion for judicial notice of the fact the removal order was issued on September 3, 2019.

superior court did not inform him that there would be immigration consequences resulting from his plea. Perez states he would not have entered his plea if he had known of the horrible immigration consequences that would result.

On December 31, 2019, the district attorney filed an opposition to Perez's motion to vacate. The opposition referred to Perez's 2000 guilty plea, the two-year sentence to state prison, and the September 2019 order of the United States Immigration Court directing that Perez be returned to Mexico. The sole ground raised in the opposition was the untimeliness of the motion. It did not, however, quote or paraphrase the statutory provisions addressing timeliness that became effective on January 1, 2019. The opposition's conclusion stated: "[Perez] brings this motion 19 years after he entered his plea. His unjustifiable delay causes prejudice to the People. Accordingly, the People respectfully request that the Court deny [Perez's] Motion to Vacate Conviction."

On January 3, 2020, the superior court held a hearing on the motion. The judge was not the judge who took Perez's plea and sentenced him in 2000.[4] At the start of the hearing, counsel for Perez stated he had a copy of Perez's parents' resident cards and his children's birth certificates. Immediately after counsel's statement, the court said:

> "The Court has read all the pleadings in this matter and reviewed the file. What strikes me is this is very similar to a case I had about five years ago, where — and I used the term equity, that really demanded I grant the motion because of his family and ties and everything else. And that's certainly what I have here. The family is here, and he's been here forever. I made that ruling, granting the motion, saying that equity demands he stays here. [¶] The Fifth District Court of Appeal overturned it, saying equity is not a consideration for ruling on these motions. [¶] While I think there are a bunch of humanitarian reasons why it should be granted, I have to say the motion is denied."[5]

---

**4** As a result, "the judge hearing the section 1473.7 motion had no firsthand familiarity with the circumstances surrounding [Perez's] plea." (*Vivar, supra*, 11 Cal.5th at p. 527.)

**5** To provide context for Judge Paden's statement, we took judicial notice of our nonpublished opinions in *People v. Superior Court (Collado)* (Nov. 7, 2011, F062852)

That statement ended the proceedings and the court subsequently filed a minute order reflecting its denial of the motion. In February 2020, Perez filed a notice of appeal and a request for certificate of probable cause.

**DISCUSSION**

I. INTERPRETATION OF TIMELINESS PROVISIONS

Section 1473.7 permits a person to file a motion to vacate a conviction that is "legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (a)(1).) Such a motion "must be timely." (*People v. Perez* (2018) 19 Cal.App.5th 818, 826.) Timeliness is governed by subdivision (b) of section 1473.7.

A. <u>Initial Timeliness Requirement</u>

The first version of subdivision (b) of section 1473.7 was enacted in 2016, was effective from January 1, 2017, through December 31, 2018, and stated:

> "A motion pursuant to paragraph (1) of subdivision (a) *shall* be filed with reasonable diligence after the later of the following: [¶] (1) The date the moving party receives a notice to appear in immigration court or other notice from immigration authorities that asserts the conviction or sentence as a basis for removal. [¶] (2) The date a removal order against the moving

---

(peremptory writ of mandate issued directing the superior court to vacate its June 8, 2011 order granting Teodoro Collado's motion under Penal Code section 1016.5 and to enter a new order denying the motion) and *People v. Superior Court (Contreras)* (Oct. 20, 2011, F063031) (peremptory writ of mandate issued directing the superior court to vacate its June 15, 2011 order granting Maria Contreras's motion pursuant to Penal Code section 1016.5 and to enter a new order denying the motion). The first sentence of the DISCUSSION in the latter opinion stated: "There is no basis for the court to rule in 'equity' as a means not to follow the law when presented with a motion pursuant to section 1016.5." (Opn. at p. 6.) Those opinions did not address motions under section 1473.7, which did not become effective until January 1, 2017.

Those decisions and others like them appear to have prompted the Legislature to enact section 1473.7 in 2016 and broaden the grounds for vacating certain convictions with harsh immigration consequences. (Stats. 2016, ch. 739, § 1.)

party, based on the existence of the conviction or sentence, becomes final." (Stats. 2016, ch. 739, § 1, italics added.)

The use of the word "shall" in the phrase "shall be filed with reasonable diligence" plainly indicated a moving party was required to act with reasonable diligence after the later of the two events described in paragraphs (1) and (2) of subdivision (b) of former section 1473.7. Thus, under the first version of section 1473.7, courts were required to deny a motion when the moving party had not acted with reasonable diligence in filing the motion.

B. Current Timeliness Provisions

The current version of subdivision (b) of section 1473.7 was enacted in 2018 and became effective on January 1, 2019. (Stats. 2018, ch. 825, § 2.) The amendment made substantial changes to the timeliness provisions, which now provide:

> "(1) Except as provided in paragraph (2), a motion pursuant to paragraph (1) of subdivision (a) *shall be deemed timely* filed at any time in which the individual filing the motion is no longer in criminal custody.
>
> "(2) A motion pursuant to paragraph (1) of subdivision (a) *may be deemed untimely* filed *if* it was not filed with reasonable diligence after the later of the following:
>
> > "(A) The moving party receives a notice to appear in immigration court or other notice from immigration authorities that asserts the conviction or sentence as a basis for removal or the denial of an application for an immigration benefit, lawful status, or naturalization.
> >
> > "(B) Notice that a final removal order has been issued against the moving party, based on the existence of the conviction or sentence that the moving party seeks to vacate." (§ 1473.7, subd. (b), italics added.)

The amendment relaxed the mandatory rule enacted in 2016 and granted superior courts the discretionary authority to deem a motion timely where the moving party did not act with reasonable diligence after the later of the triggering events.[6]

Subdivision (b)(1) of section 1473.7 sets forth a mandatory general rule for the timeliness of motions based on the absence of a meaningful understanding of the immigration consequences of a plea. Its use of the phrase "shall be deemed timely" plainly creates a mandatory rule. "It is a well-settled principle of statutory construction that the word 'may' is ordinarily construed as permissive, whereas 'shall' is ordinarily construed as mandatory, particularly when both terms are used in the same statute." (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 443.) We adopt the ordinary meaning of the word "shall" and conclude the rule established by section 1473.7, subdivision (b)(1) is mandatory. (See *People v. Ledesma* (1997) 16 Cal.4th 90, 103 [in ordinary usage, "shall" is mandatory].) The Legislature's findings, which are contained in the uncodified section of the 2018 amendment (Stats. 2018, ch. 825, § 1), and other provisions of section 1473.7 do not indicate a contrary legislative intent.

The clause "[e]xcept as provided in paragraph (2)" clearly identifies an exception to the mandatory rule stated in subdivision (b)(1) of section 1473.7. Based on the plain meaning of the text, the mandatory rule is properly characterized as a general rule subject to one exception.

Next, we consider the nature and scope of the exception. Subdivision (b)(2) of section 1473.7 uses the phrase "may be deemed untimely." "[I]n delineating the trial court's authority by use of the word 'may,' the statutory language itself indicates the trial court has broad discretion." (*People v. Moine* (2021) 62 Cal.App.5th 440, 448.) Thus,

---

**6** For convenience, this opinion refers to the events described in subparagraphs (A) and (B) of paragraph (2) of subdivision (b) of section 1473.7 as the "triggering events."

applying the ordinary meaning of the word "may," we conclude the exception in subdivision (b)(2) of section 1473.7 grants discretionary authority to the court.

The discretion to deem a motion untimely arises "if it was not filed with reasonable diligence after the later of the later of the" triggering events. (§ 1473.7, subd. (a)(2).) According to the definition of "if" in one legal dictionary, "[i]n deeds and wills, this word, as a rule, implies a condition precedent, unless it is controlled by other words." (Black's Law Dict. (6th ed. 1990) p. 746; see *Shackley v. Homer* (1910) 87 Neb. 146, 149–150 ["No doubt the general meaning of the word 'if' implies a condition precedent, unless it be controlled by other words"].) We conclude this definition of "if" also establishes its ordinary meaning when used by our Legislature in a statute. Applying this ordinary meaning, we conclude the use of the word "if" in subdivision (b)(2) of section 1473.7 indicates the discretionary authority to deem a motion untimely is conditional.

The statutory condition is satisfied when the motion "was not filed with reasonable diligence after the later of the" triggering events. (§ 1473.7, subd. (b)(2).) Only when the condition is satisfied does the court have the discretion to deem a motion untimely. Thus, the lack of reasonable diligence does not automatically require the superior court to deem the motion untimely. Instead, the absence of reasonable diligence subjects the motion to the court's discretionary authority and, in exercising its discretion, the court might deem the motion timely or might deem it untimely. Section 1473.7 does not provide any guidance for exercising that discretion, such as a list of factors that should be weighed by the court. Based on the lack of explicit statutory guidance, we conclude the well-established general rule governing grants of discretion applies. Thus, the "[d]iscretion is abused when the court exceeds the bounds of reason, all of the circumstances being considered." (*People v. Bradford* (1976) 17 Cal.3d 8, 20.) In other words, before exercising its discretionary authority regarding the timeliness of the motion, the court must consider the totality of the circumstances.

### C. Summary of Timeliness Principles

Based on the absence of ambiguities in the statutory text and the litigants' decision not to present extrinsic materials relevant to the construction of section 1473.7, we adopt the plain meaning of the language. (See *Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 634 [plain meaning of statute control and resort to extrinsic sources is unnecessary]; see generally, *Coburn v. Sievert* (2005) 133 Cal.App.4th 1483, 1495 [use of extrinsic materials to identify latent ambiguity].) We conclude subdivision (b) of section 1473.7 unambiguously establishes the following principles governing the timeliness of a motion to vacate a conviction based on the absence of a meaningful understanding and knowing acceptance of the immigration consequences of a plea.

First, if "the individual filing the motion is no longer in criminal custody" and the triggering events specified in subparagraphs (A) and (B) of subdivision (b)(2) of section 1473.7 have not yet occurred, the motion must be deemed timely under the mandatory rule in subdivision (b)(1) of section 1473.7.

Second, if the triggering events have occurred, the superior court must determine whether the motion was "filed with reasonable diligence after the later of" the triggering events. (§ 1473.7, subd. (b)(2).)

Third, if the superior court determines the moving party acted with reasonable diligence after the later of the triggering events, the motion must be deemed timely under the mandatory rule in subdivision (b)(1) of section 1473.7. In other words, the discretionary exception to deem the motion untimely does not apply.

Fourth, if the superior court determines the moving party did not act with reasonable diligence after the later of the triggering events, the court must exercise its discretionary authority and decide whether to deem the motion untimely. To properly exercise the discretionary authority granted by subdivision (b)(2) of section 1473.7, the court must consider the totality of the circumstances.

## II. APPLICATION OF TIMELINESS PROVISIONS[*]

### A. Superior Court's Decision

The superior court's analysis of Perez's motion to vacate did not expressly apply the foregoing principles or otherwise refer to the language of section 1473.7. Instead, the court referred to an earlier case in which he (1) used the term equity, (2) concluded equity demanded that he grant the motion, and (3) was overturned by this court. After describing that earlier case, the court concluded: "While I think there are a bunch of humanitarian reasons why it should be granted, I have to say the motion is denied."

The court's statements from the bench and the subsequent minute order did not include the finding required by section 1473.7, subdivision (e)(4). That provision states in relevant part: "When ruling on a motion under paragraph (1) of subdivision (a), the only finding that the court is required to make is whether the conviction is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." Because the court did not make this finding and the opposition to the motion did not address Perez's understanding or the existence of prejudicial error, we infer the court did not reach those issues and, instead, determined the motion was untimely.

We conclude the superior court's determination that the motion was untimely was based on legal error. Specifically, the court did not apply the provisions set forth in subdivision (b) of section 1473.7 that govern the timeliness of the motion. The court's reference to an earlier case addressing a section 1016.5 motion suggests the court viewed Perez's motion to vacate as being brought under that section instead of section 1473.7 or, alternatively, believed the criteria was the same for each type of motion. Both alternatives are incorrect. Section 1016.5 does not contain a timeliness provision like

---

[*] See footnote, *ante*, page 1.

subdivision (b) of section 1473.7. Also, the analysis in our 2011 opinion could not have stated anything relevant to the timeliness of a section 1473.7 motion because section 1473.7 did not exist in 2011.

Having concluded the timeliness principles set forth in subdivision (b) of section 1473.7 were not applied to Perez's motion, we next consider how to remedy that error. One possibility would be to remand the matter to the superior court with instructions to analyze the timeliness of the motion using the principles established by section 1473.7, subdivision (b). Instead, we will consider the circumstances surrounding Perez's motion and determine whether the timeliness of the motion can be determined as a matter of law.

B. The Motion Was Timely Filed

The record establishes that Perez "is no longer in criminal custody." (§ 1473.7, subd (b)(1).) Therefore, he falls within the mandatory general rule in subdivision (b)(1) of section 1473.7 unless the exception set forth in subdivision (b)(2) of section 1473.7 applies.

An analysis of whether the discretionary exception might apply to Perez starts with determining whether the triggering events specified in subparagraphs (A) and (B) of subdivision (b)(2) of section 1473.7 have occurred and, if so, the date of the last to occur.

Perez's motion stated he "had an individual hearing with the US Immigration Court on September []3, 2019 in San Francisco, California, where the judge ordered that he be returned to Mexico. Mr. Perez was returned to Mexico on September 14, 20[1]9, in Case No. A070 716 459, and has been there since." The district attorney's opposition to Perez's motion conceded these facts, stating: "On September []3, 2019, the United States Immigration Court ordered the Defendant be returned to Mexico. Defendant is currently in Mexico." It appears Perez's attorney relied on this concession when he appeared at the January 3, 2020 hearing because the attorney did not bring a copy of the immigration order or other documents showing its issuance. He did, however, bring documents

relating to Perez's parents and children to further demonstrate Perez's strong personal ties to this country.

We conclude the order of the immigration court issued in September 2019 qualifies as "a final removal order … issued against" Perez for purposes of section 1473.7, subdivision (b)(2)(B). We further conclude that Perez's removal to Mexico in September 2019 constituted notice that the final order had been issued. Therefore, the triggering event described in section 1473.7, subdivision (b)(2)(B) occurred in September 2019.

A comparison of the September 2019 date with December 23, 2019—the date Perez filed his motion—shows it took Perez over two, but less than three, months to file his section 1473.7 motion. Accordingly, we consider whether this lapse of time means the motion "was not filed with reasonable diligence" as that phrase is used in section 1473.7, subdivision (b)(2). Here, Perez was physically removed from the United States and was at least 200 miles away from the county where the motion was filed. In such circumstances, we find as a matter of law that Perez acted with reasonable diligence in getting his section 1473.7 motion filed in less than three months after his removal to Mexico. Because Perez acted with reasonable diligence, his motion must be deemed timely pursuant to section 1473.7, subdivision (b)(1). Consequently, there is no need to remand this case to the superior court to consider the totality of the circumstances and make a discretionary determination of the motion's timeliness.

## III. MERITS OF THE MOTION[*]

### A. General Principles

The Legislature adopted section 1473.7 to make relief available "to certain immigrants who accepted pleas without understanding the immigration-related

---

[*] See footnote, *ante*, page 1.

consequences of such decisions." (*Vivar, supra,* 11 Cal.5th at p. 528.) Subdivision (a) of section 1473.7 states:

> "A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence for any of the following reasons: [¶] (1) The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel."

The moving party has the burden of proof by a preponderance of the evidence. (§ 1473.7, subd. (e)(1); *Vivar, supra,* 11 Cal.5th at p. 517.) In accordance with the statutory text, Perez must demonstrate (1) an "error" occurred, (2) the error was "prejudicial," and (3) the error damaged his ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of his plea.

B. Standard of Review

A superior court's decision to grant or deny a section 1473.7 motion is subject to independent review. " '[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' [Citation.] … ' "[I]ndependent review is *not* the equivalent of de novo review ...." ' [Citation.] An appellate court may not simply second-guess factual findings that are based on the trial court's own observations. [Citations.] … In section 1473.7 proceedings, appellate courts should … give particular deference to factual findings based on the trial court's personal observations of witnesses. [Citation.] … Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Vivar, supra,* 11 Cal.5th at pp. 527–528, fn. omitted.) As a practical matter, the independent standard of appellate review is appropriate because the superior court and the appellate court are in the same position when reviewing a cold record and interpreting written declarations. (*Id*. at p. 528.)

In this case, no witnesses testified at the January 2020 hearing and the judge who heard the motion was not the judge to accepted Perez's plea or sentenced him. Because the cold record in this case places us in the same position as the trial court, we will independently review the record and determine whether Perez carried his burden of proving a prejudicial error damaged his ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of his plea. (§ 1473.7, subd. (a)(1).)

C. The Error

Perez's motion asserted an error on the part of his defense attorney damaged his ability to understand and defend against the adverse immigration consequences of his plea of nolo contendere. Perez asserts he does not recall any advisement by the superior court of the immigration consequences of his plea. This assertion is supported by the minute order from his plea hearing, which does not show a check mark inside the parentheses before the line stating he was advised of "possible deportation if not a citizen of the United States." Perez also asserts he does not recall any advisement by his defense attorney and, instead, states Kordell informed him that there would be no negative immigration consequences because Perez was a legal permanent resident. Kordell died in 2015 and, as a result, is not available to confirm or deny Perez's account of the advice given.

To establish the type of "error" required by section 1473.7, a defendant need not establish ineffective assistance of counsel. Section 1473.7, subdivision (a)(1) states: "A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." Accordingly, "the focus of the inquiry in a section 1473.7 motion is on the '*defendant's own error* in ... not knowing that his plea would subject him to mandatory deportation and permanent exclusion from the United States.' " (*People v. Mejia* (2019)

36 Cal.App.5th 859, 871 (*Mejia*), quoting *People v. Camacho* (2019) 32 Cal.App.5th 998, 1009 (*Camacho*).)

Based on our independent review in accordance with the principles established in *Vivar*, we conclude Perez has carried his burden of showing an error in the form of a failure to advise him of the immigration consequences of his plea. His declaration, which has contemporaneous corroboration in the form of the minute order, is sufficient to carry his burden.

D. Misunderstanding

Here, the information that was not provided to Perez directly involved the immigration consequences of his plea. The absence of information about those consequences damaged Perez's ability to meaningfully understand and knowingly accept the immigration consequences of entering a no contest plea. Stated another way, it is not reasonable to expect that the 19-year-old Perez had the level of legal sophistication and knowledge to understand how his plea would impact his status as a legal permanent resident. (See *People v. Patterson* (2017) 2 Cal.5th 885, 898 [" 'Immigration law can be complex' "].) Thus, we conclude Perez's declaration is credible in asserting: "I did not know that my plea and resultant conviction would have such horrible consequences." It follows that Perez has carried his burden of showing the error damaged his "ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of [his] plea." (§ 1473.7, subd. (a)(1).)

E. Prejudice

Section 1473.7 does not contain a definition of "prejudicial." In *Vivar*, the Supreme Court concluded an error is prejudicial if the defendant "demonstrat[es] a reasonable probability that [he] would have rejected the plea if [he] had correctly understood its actual or potential immigration consequences." (*Vivar, supra,* 11 Cal.5th at p. 529.) Courts assess whether a reasonable probability has been shown by considering

the totality of the circumstances. (*Ibid*.) Particularly relevant factors include (1) the defendant's ties to the United States, (2) the importance the defendant placed on avoiding removal, (3) the defendant's priorities in seeking a plea bargain, and (4) whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible. (*Id*. at pp. 529–530.)

Perez's declaration asserted he would not have entered a no contest plea if he "had known of the horrible immigration consequences that would have resulted[,] requiring that I be deported, and preventing me from applying for [legal permanent resident] status again." This assertion must be corroborated with objective evidence. (*Vivar*, *supra*, 11 Cal.5th at p. 530.) Here, as in *Vivar*, the objective evidence consists of details about Perez's strong personal ties to the United States. These ties are contemporaneous evidence supporting the inference that Perez would have rejected the plea and taken the risk of going to trial to avoid removal from the United States. (See *Camacho, supra,* 32 Cal.App.5th at pp. 1011–1012 [defendant's strong ties to this country supported inference that he "would never have entered the plea if he had known that it would render him deportable"].) At the time of his plea, Perez had spent the last 16 years of his life in the United States, had been a legal permanent resident for approximately five years, and had virtually no ties to Mexico. His parents are legal permanent residents of the United States.[7] These personal details provide sufficient corroboration and establish a reasonable probability that Perez would not have entered the plea that resulted in his deportation if he had meaningfully understood the immigration consequences at the time of his plea and, instead, would have risked going to trial if he had known he was going to be deported as a result of his plea.

---

**7** The copies of the birth certificates of Perez's children that his attorney brought to the January 3, 2020, hearing are not part of the record and, therefore, we cannot determine if one or more of the children were alive at the time of his plea.

To summarize, based on our independent review of the record, we conclude Perez has demonstrated the existence of an error that was both prejudicial and damaging to his ability to meaningfully understand and accept the immigration consequences of his no contest plea. As a result, this matter should be remanded to the superior court with directions to grant his section 1473.7 motion. (See *People v. Rodriguez* (2021) 60 Cal.App.5th 995, 1006 [reversed order denying defendant's motion to vacate conviction and remanded with directions to grant motion]; *Mejia*, *supra*, 36 Cal.App.5th at p. 874 [reversed order denying defendant's § 1473.7 motion and remanded to allow him to withdraw his guilty pleas]; *Camacho*, *supra*, 32 Cal.App.5th at pp. 1004, 1012 [reversed denial of motion and remanded with instructions to vacate the conviction].)

## DISPOSITION

The order denying the section 1473.7 motion is reversed. The matter is remanded and the superior court is directed to grant the motion and vacate the conviction.

FRANSON, Acting P.J.

**WE CONCUR:**

SMITH, J.

SNAUFFER, J.